ELI PENTER, Administrator of JOHN S. ROBERTS, Respondent, v. JAMES ROBERTS, Appellant.

Kansas City Court of Appeals, November 14, 1892.

1. **Practice, Appellate:** DISTURBING VERDICT. Where there is substantial evidence on both sides, the appellate court will not disturb the verdict unless the preponderance against it is such as to necessarily imply passion or prejudice.

2. **Parent and Child:** IMPLIED CONTRACT: INSTRUCTIONS. Where a son renders services for his father, the law raises the presumption that such services were acts of gratuitous kindness, for which he is not entitled to pay unless he shows, by the weight of evidence, there was an express contract that he was to receive pay. Instructions set out in the opinion approved.

*Appeal from the Boone Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

AFFIRMED.

*Wellington Gordon* and *E. M. Bass,* for appellant.

(1) This court will not permit a verdict and judgment to stand where there is no evidence to sustain it, and certainly there was none to warrant the verdict of the jury on the set-off claimed by appellant. *Krider v. Milner,* 99 Mo. 143, and cases cited in appellant's brief; *Avery v. Fitzgerald,* 94 Mo. 207; *Warren & Son v. Maloney,* 39 Mo. App. 297. This court will not permit a verdict and judgment to stand where the evidence is conflicting and the trial court misdirects the jury. *Royer v. Fleming,* 58 Mo. 438; *Clark v. Kitchen,* 52 Mo. 316; *Carson v. Porter,* 22 Mo. App. 185–6; *Chyrowitch v. Mining Co.,* 74 Mo. 176; *Fulkerson v. Mitchell,* 82 Mo. 13. (2) Before the presumption of law will require a son, doing menial services for his father at his instance and request, and which were necessary for the preservation of life, and from which he received great benefit, to show by a preponderance of the evidence, that there was an express agreement or specific contract between them for services and pay therefor, he must have been living with his father as a member of his family. And the trial judge erred in giving instructions, numbered 4, 5 and 6, for the respondent, and numbers 3 and 4 for the appellant, as modified by the trial judge, and in refusing to give instructions asked for by the appellant, numbered 3, 4 and 7. *Smith v. Myers,* 19 Mo. 433; *Guenther v. Birkicht, Adm'r,* 22 Mo. 439; *Hart v. Hart's Adm'r,* 41 Mo. 441; *Callahan v. Riggins,* 43 Mo. App. 130; *Andrews v. Foster,* 17 Vt. 556. The burden of proof

was upon the respondent to show the family relationship, before it was shifted to the appellant or became his duty to prove an agreement or a specific contract for services. Citations as above, and *Curry v. Curry*, 114 Pa. St. 7.

*C. B. Sebastian*, for respondent.

(1) The instructions are literal copies of those given in the case of *Koch v. Hebel*, 32 Mo. App. 103, and are approved by the court. The same principle has frequently come before this court and the supreme court in this class of cases, and has never been changed or overruled. *Brock v. Cox's Adm'r*, 38 Mo. App. 40. (2) This court and the supreme court have frequently laid down the rule that when upon a view of the whole record it is clearly manifest that the judgment is for the right party it will not be reversed, although errors may have intervened. *Cheek v. Waldron*, 39 Mo. App. 21; *Vaughan v. Daniels*, 98 Mo. 230.

GILL, J.—Plaintiff prosecutes this action as administrator of the estate of John S. Roberts, deceased. There were originally three counts in the petition, but as the court sustained a demurrer to the third count, and plaintiff thereupon abandoned the same, we shall notice it no further. The first count declared on a promissory note for $1,000 executed by defendant, James Roberts, and payable to his father, John S. Roberts; and by the second count plaintiff sought to recover of said defendant the sum of $571.15, as the aggregate amount collected on what was described in the evidence as the "Hiram Smith note," a note which said Smith gave to John S. Roberts during his lifetime, and which it was alleged said Roberts placed with defendant for collection. The answer admitted the

execution of the $1,000 note, but set up a want of consideration, and as to the second count admitted to having collected the Smith note; but defendant alleged that his father, the said John S. Roberts, in his lifetime, made to defendant an absolute gift of said Smith note. Defendant then further claimed by way of set-off $800 for personal services rendered his father at various times from 1880 to 1890. On the issues thus joined the cause was tried by a jury, who rendered a verdict for plaintiff on the first count, for the defendant on the second count, and for the plaintiff on the defendant's set-off for alleged services performed. The administrator submitted to a judgment rendered in accordance with the verdict, but defendant appealed.

I.   Counsel for defendant have, in their printed brief, argued, with some apparent earnestness, that we should reverse the judgment because of an alleged want of evidence to support the verdict of the jury. Our duty in this regard is quite plain. There was substantial evidence on both sides of the issues tried, and in that event this court will not disturb the jury's finding. This is the rule uniformly adopted by the appellate courts of this state, except where there is such a preponderance against the verdict as necessarily to imply passion or prejudice on the part of the jury. The record here shows no such case.

II.   The only matter remaining, and which deserves notice, relates to defendant's claim or set-off for $800 for alleged services performed for his father. It seems that in the year 1880, John S. Roberts became a widower, and thereafter until 1890 (the time of his death) he abandoned housekeeping and went to live with his three married daughters who resided near his former home. He divided his time among these daughters— was, too, occasionally sick, and they cared for him.

The old gentleman was afflicted for several years with rupture and chronic constipation; and to relieve the latter it was occasionally necessary to use the syringe. The defendant being the only male member of his immediate family living near by, the old gentleman seems to have relied on him to perform this delicate task. The defendant did this service, went when required to his sister's where the father was confined by his sickness, and gave the needed injections. And it is for this that the defendant asks to be paid $800 out of his father's estate. It is only fair to state that the elder Roberts expressed a desire to have the defendant perform this service, and objected to others doing so. The evidence shows, too, that the sick father expressed therefor much gratitude, and, indeed, manifested his appreciation in a substantial way in the gift of money and other things of value, among the latter being the "Smith note" which yielded defendant $571.15.

Upon this state of the evidence the trial court gave the following instructions among others: "4. The fact that the defendant was the son of John S. Roberts, deceased, raises the presumption that the services rendered by defendant for his father were acts of gratuitous kindness, for which he was not entitled to pay, unless he has shown by the weight of evidence that there was an understanding and agreement with his father that he was working for wages, and that he was to receive pay therefor, and, unless he has so shown to the satisfaction of the jury, he cannot recover, and you will find for the plaintiff upon the set-off.

"5. The court instructs the jury that the defendant in order to recover upon the offset he has filed must show affirmatively by the weight of evidence that he and his father had an agreement and understanding that he was to pay him wages for waiting on him and

using the syringe on him; although such agreement may be proven by facts and circumstances from which they may be implied, yet these facts and circumstances must show to the satisfaction of the jury that such understanding existed."

Defendant insists that the giving of these instructions was error. It seems to be conceded by his counsel that if the son had been residing at the father's house and was a member of the family, then the doctrine above mentioned would find proper application; but as the evidence showed the son to live in the neighborhood and apart from his father, then, it is contended, the same rule applies as where a stranger in blood performs valuable services for another, and that is, that an implied obligation arises to pay whatever such services are reasonably worth. We must hold this point against defendant's learned counsel. There have been many cases of this general nature before the courts of this state, and the law is thus aptly stated by Judge SCOTT in *Smith v. Myers*, 19 Mo. 434: "The general rule is that, whenever service is rendered and received, a contract of hiring or an obligation to pay will be presumed. This is an undoubted rule between strangers. But a relationship between the parties may exist such as will cause the presumption that the services are acts of gratuitous kindness and affection. The degree of the relationship may strengthen or diminish the implication according to its proximity or remoteness."

Where one man labors for another (and there are no ties of relationship as above mentioned), the presumption arises that the work is to be paid for by the party for whose benefit it was done. This is said to be "a conclusion to which the mind readily comes from a knowledge of the circumstances of the particular case, and the ordinary dealings between man and man. But where the services are rendered between members of the

same family no such presumption will arise.'' Lawson on Presumptive Evidence, 75. It is said also that the law takes notice very properly of the customs of hospitality and friendly intercourse usual among mankind. Lawson on Presumptive Evidence.

Now with knowledge of the circumstances of this case and the ordinary dealings between man and man, would those ''customs of hospitality and friendly intercourse usual among mankind'' ever suggest that this defendant was performing those services in the treatment of his sick father *not* as a *gratuitous kindness*, but for pay? It would seem not. No such thought, I take it, would ever enter the mind of any observer. It would be naturally assumed that the son was prompted in so doing wholly by that filial affection usual in such cases and not for the desire for mere gain. So then under the circumstances admitted in this case we think the court's instructions telling the jury that the services rendered by defendant to his father were presumptively mere acts of gratuitous kindness, and not intended to be charged for, were not erroneous, but properly declared the law of this case.

The judgment is for the right party, and will be affirmed. All concur.