<hr />

ROBERT RAMSEY *et al.*, Respondents, v. LOUISA HICKS *et al.*, Appellants.

St. Louis Court of Appeals, March 7, 1893.

1. **Administration:** ANNULMENT BY ACTION IN EQUITY OF FRAUDULENT ALLOWANCE. When the allowance of an invalid claim against the estate of a decedent is obtained through collusion between the administrator in charge of the estate and the claimant, and the estate consists in whole or part of personalty, an action in equity will lie to annul the allowance for fraud. (*Casey v. Murphy,* 7 Mo. App. 247, is *distinguished.*)

2. ———: ———: EVIDENCE OF COLLUSION. An administrator is under no obligation to give notice of the presentation of a demand to those interested in the decedent's estate as distributees, nor can fraud be predicated upon his failure to make a defense to the claim, unless he is ignorant of the merits of the claim, or has some good reason to suspect its validity.

3. **Contracts**: IMPLIED PROMISE TO PAY FOR SERVICES. A promise to pay for care and nursing may be implied from circumstances. The fact that services of this character are rendered by the daughter and son-in-law of the recipient does not alter this rule.

*Appeal from the Wayne County Circuit Court.*—HON. J. F. GREEN, Judge.

REVERSED AND REMANDED *(with directions)*.

No brief filed for appellants.

*Settle & Bugg*, for respondents.

BIGGS, J.—The plaintiffs, Robert Ramsey, Hughey Ramsey, Elizabeth Perkins, Nancy Casey and Rebecca Ross, and the defendant, Louisa Hicks, wife of A. J. Hicks, her co-defendant, are the children and heirs at law of Elizabeth Ramsey, deceased, who died intestate in Wayne county in the month of December, 1888. Mrs. Ramsey left a small estate consisting of land and some personal property. H. Y. Maberry administered on her estate, and, on the tenth day of May, 1889, the probate court of Wayne county allowed against the estate a demand for $1,660 in favor of the defendants. The plaintiffs instituted this action to set aside this allowance. The bill alleges that the claim upon which the allowance was made is fraudulent, and without foundation in law or fact; that the allowance of the claim is the result of collusion between the defendants and the administrator, in that the administrator failed to notify the plaintiffs of the existence of the claim, and fraudulently waived the service of the required notice of its presentation; that he failed to make any defense, although he well knew that the claim was fraudulent; and that he concealed the allowance of the claim from the plaintiffs.

The answer admitted the allowance, but denied that it was fraudulently procured, or that there was an intentional concealment of the fact by them. The circuit court found the issues against the defendants, and set aside the judgment of allowance. The defendants have brought the case here for review.

The claim that the bill states no grounds for equitable interference is untenable. The defendants rely on the case of *Casey v. Murphy*, 7 Mo. App. 247. That was an action brought by Casey, as the heir of an estate, to set aside the allowance of a claim for fraud in its procurement. It was admitted that the estate consisted only of land. The court held that Casey's remedy was perfect at law; that he could resist an order for the sale of the land on account of the alleged fraud in the allowance of the claim. As an additional reason why a court of equity could not interfere, it was suggested that, until some steps were taken to subject the land to sale for the payment of the fraudulent claim, it could not be said that Casey had been injured. The case we have before us is different as to its facts. There is some personal property belonging to Mrs. Ramsey's estate, which the defendants could compel the administrator to apply to the discharge of their claim. To prevent this, plaintiffs have no remedy at law.

Our conclusion as to the merits of this controversy is different from that reached by the trial judge. The rule is that there must have been fraud in the procurement of the judgment itself to authorize a court of equity to set it aside. *Murphy v. DeFrance*, 101 Mo. 151. Proof that the claim itself was tainted with fraud, or that the evidence adduced at the trial was insufficient to authorize the judgment, becomes admissible only when there is other evidence tending to prove fraud in obtaining the judgment, and then only to enable the

court the better to judge of the criminating circumstances. *Picot v. Bates*, 47 Mo. 390.

The defendants' demand was for boarding, nursing and taking care of Mrs. Ramsey for eighteen or twenty years preceding her death. The facts established, and which are relied on as evidence of collusion and fraud in obtaining the judgment, are: That the administrator waived the service of notice of the presentation of the claim for allowance; that the plaintiffs, whose places of residence were some fifteen or twenty miles distant from that of the administrator and the defendants, received no notice of the presentation of the claim; that the administrator failed afterwards to notify them of the allowance,. and that he made no defense to the action. The plaintiffs introduced Mr. Maberry, who testified in substance that he was an attorney, and had formerly held the position of public administrator of the county; that the defendants consulted him about their claim, and that he informed them that there would have to be an administration of the estate; that afterwards at their solicitation he took out letters, and that he then informed them that they must employ an attorney to take charge of their claim, and that he could not longer advise them concerning it; that the claim was presented and established by the testimony of two witnesses; that his cross-examination of the witnesses was limited, and that he called no witnesses for the defense, because he was satisfied from his personal knowledge that the claim was just. He further stated that the defendants were exceedingly poor, and he admitted that he did not notify the plaintiffs of the presentation or allowance of the claim.

John Wilson testified as follows: "I was a witness for Mr. Hicks and wife in the probate court at the time their claim was allowed, and, as well as I can recollect, I testified in that court that I lived about three-quarters

of a mile of Mr. Hicks', and had lived there about twenty-five or thirty years; that Mrs. Ramsey lived with her daughter, Mrs. Hicks, and Mr. Hicks about twenty years; that Mr. Hicks and wife took care of her all that time, except when she went visiting, and Mr. Hicks would go after her and bring her back to his home; that I was at Mr. Hicks' house many times; that in Mrs. Ramsey's condition it was worth $100 a year to take care of her, she being feeble and blind; that she required a good deal of attention and waiting upon; that I was not related to them, and had no interest in the claim; that I went to Greenville by request of Mr. Hicks as a witness in the probate court.''

John Sutherlin also testified that he was called as a witness in the probate court to establish the defendants' claim. His testimony there was substantially the same as that of Wilson. The plaintiffs made no attempt to prove that the defendants did not take care of Mrs. Ramsey, or that she was not, during the last twenty years of her life, blind and almost helpless; or that the defendants rendered the services with no intention at the time of charging for them; or that the services were not worth the amount which the defendants claimed.

The facts upon which plaintiffs rely to establish fraud or collusion are within themselves insufficient. The administrator was under no legal obligation to notify the plaintiffs of the presentation of the demand, nor can fraud be predicated of his failure to make a defense, unless he was ignorant of the merits of the claim, or had some reason to suspect that it was tainted with fraud—all of which the other evidence clearly disproves. So far as this record shows, the claim was of a very meritorious character. It had for its foundation the care and burden of an old and blind woman for over twenty years. It also appears that, during that long period of time, the plaintiffs cheerfully per-

mitted their sister to bear this great burden. The administrator said that he attempted no defense, because he had personal knowledge of the facts, and that he thought the claim was just and reasonable in amount. These undisputed facts put the question of fraud in obtaining the allowance entirely out of the case.

In the recent case of *Link v. Link*, 48 Mo. App. 345, we sustained the judgment of the circuit court setting aside the allowance of the claim, because of proof of an actual and fraudulent concealment by the administrator, both of the presentation of the claim and of the allowance. The claim was in favor of the administrator himself, and the evidence tended strongly to prove that the indebtedness was without foundation.

The trial court seems to have entertained the opinion that an agreement on the part of Mrs. Ramsey to pay for the services rendered, and of the defendants' intention to charge therefor, could only be established by positive proof. The rule is that the triers of the fact in such cases may, from the circumstances in evidence, infer a promise to pay and an intention to charge. *Hart v. Hart*, 41 Mo. 441; *Reando v. Misplay*, 90 Mo. 251; *Bitrick v. Gilmore*, 53 Mo. App. 53. The fact that Mrs. Hicks was the daughter of Mrs. Ramsey does not change this rule. *Hart v. Hart, supra.*

We are of opinion that the judgment of the circuit court is wrong. It will, therefore, be reversed, and the cause remanded with directions to dismiss the proceeding. All the judges concur.