## MARGARET E. ALLEN, Respondent, v. JOHN R. ALLEN, Appellant.

### St. Louis Court of Appeals, April 28, 1903.

1. **Services, Personal: CONTRACT FOR, MAY BE INFERRED: WILL, INADMISSIBLE.** A testator's will which provided that if any one of his children to whom a bequest had been made should be allowed a claim against his estate, such bequest should be that much reduced, was not admissible in an action by his daughter-in-law for personal services against his estate, rendered him and his wife during the last years of their lives, for the reason that she received no bequest under the will, nor was she one of his children.

2. ——: **EVIDENCE SUFFICIENT TO SUSTAIN VERDICT.** The testimony examined and found sufficient to support plaintiff's cause of action.

3. ——: **DECLARATIONS OF DECEASED TO THIRD PERSON ADMISSIBLE.** In an action by a daughter-in-law of a decedent against his estate to recover for personal services, it was competent to show that the deceased had expressed to a third person his intention to pay both plaintiff and her husband, in order to prove a promise to pay plaintiff for her services.

4. ———: CLAIM PROVEN BY CIRCUMSTANTIAL EVIDENCE. A decedent's promise to pay his daughter-in-law for personal services need not be proven by direct testimony, but may be inferred from circumstances of the particular case and the nature of the services rendered.

Appeal from Shelby Circuit Court.—*Hon. N. M. Shelton,* Judge.

AFFIRMED.

*V. L. Drain* for appellant.

(1) The demand of plaintiff was presented and filed during the vacation of the probate court, as appears by the transcript from that court. It has been expressly held that the court does not acquire jurisdiction unless the demand be presented at a regular or adjourned term of court. It follows that if the probate court did not have jurisdiction of the subject-matter, the circuit court would not acquire such jurisdiction on appeal. It is true that section 184, Revised Statutes 1899, does not now contain the words "and presented to the court," but section 189 still requires that a demand be thus presented. Stockton v. Ransom, 60 Mo. 535; Dingle v. Pollick, 49 Mo. App. 479; Bank v. Burgin, 73 Mo. App. 108. (2) Under the ruling in the case below the will is not barred as a self-serving document, and therefore was competent as showing that the testator did not, at the time of its execution, recognize any contractual obligation as was sought to be shown by the deposition of the witness Stuart. Cowell v. Roberts, 79 Mo. 218. Admitting the deposition of Stuart, however, and waiving all question of its competency, still the evidence is not sufficient to entitle plaintiff to a submission of her cause to a jury. It brings the case squarely within the rule announced in the cases of Castle v. Edwards, and Louder v. Hart, cited below. It was merely a loose expression of gratitude which does not bind his estate, and can not authorize a recovery in this action. Guen-

ther v. Birchert, 22 Mo. 439; Snyder v. Free, 114 Mo. 360.

J. T. Perry, J. D. Dale and G. W. Humphrey for respondent.

The court held, however, that the matter was properly submitted to the jury. In the case of Hayden v. Parsons, 70 Mo. App. 493, the court held that a niece of decedent, who with her two children lived in his home, was not required to prove an express contract. Instruction No. 3 was approved in the case of Hart v. Hart, Admr., 41 Mo. 446, and in the following cases: Smith v. Myers, 19 Mo. 433; Reando v. Misplay, 90 Mo. 251; Ramsey v. Hicks, 53 Mo. App. 195.

GOODE, J.—The contest in this case is over a demand presented by respondent Margaret E. Allen against the estate of her deceased father-in-law, David Allen, for services rendered to said deceased in household work and caring for himself and his wife through eight years immediately preceding his death. David Allen was a farmer who lived in Shelby county, Missouri. He had eight children, one of whom was James Allen, the husband of the respondent. In 1892, this son James resided at Leonard, where he was engaged in the mercantile business. During the fall of that year he married his wife, Margaret, and at the request of his father, as the testimony shows, disposed of his stock of goods and went to live with his parents on their homestead. At that time only two children of David Allen were living with him; his son Tom, who continued to reside with his parents about four years after James and his wife went to reside with them, and a daughter who married a month after that event. Both David Allen and his wife were in poor health and part of the time were unable to take care of themselves and totally disabled from attending to household affairs.

The old lady was a paralytic and often bedridden, needed the personal ministrations of another, and could do no work nor even attire herself. The old gentleman had varicose veins in his legs which broke into ulcers occasionally and discharged offensive matter. He was able to help himself most of the time and assist his wife to dress and move about the house, but was often compelled to lie down during the day and once in a while was helpless, particularly during four weeks after a severe accident he experienced.

The testimony is that James and Margaret Allen were induced to remain with and care for the old people, largely through sympathy and affection, but on the promise, too, that the homestead and eighty acres of land should be given to them. From 1892, when they went to the farm, until the death of David Allen, they continued to reside there and during that period the respondent did the cooking, general washing, ironing, sewing and house-cleaning for the family. She likewise gave personal attention to her mother-in-law when she was helpless, as was usually the case; dressed her, combed her hair and waited on her like she was a child. Besides these duties, she rinsed the bandages used to wrap the sores on her father-in-law and washed his underwear, which became filthy from the discharges. She also made the garden and raised chickens for the family's use. James Allen cultivated the farm as a common renter, paying his father one-third of the crop for the rent. There is evidence to prove that the contract between them in regard to table supplies was that David Allen was to furnish everything, but that after the first two years James furnished one-half or more of the provisions and he also furnished part of the teams and farming implements. Margaret Allen had three children of her own to look after besides taking care of her mother-in-law and doing the domestic work for all the members of the household, including Tom Allen, her brother-in-law, while he stayed with them.

In 1897 David Allen executed a will by which he divided his property among his children equally, directed that no claim of any kind should be allowed against his estate in favor of any of his children and that if such claim should be allowed, the share of the child receiving it should be diminished by the amount of the allowance. Some time prior to making the will, he drew up a contract that his son James and his daughter-in-law Margaret should make no claim against his estate for the work they had done and demanded they should sign it. His son grew quite angry at the request and both of them refused to sign it, although there is testimony that Margaret Allen said at the time she would never prefer a claim. Some points in the testimony indicate that David Allen was influenced by one or more of his children to take this course.

The evidence as to the arduousness of respondent's duties and the faithfulness with which she performed them is convincing and practically without contradiction. At one time she and her husband thought of leaving the place and establishing a home of their own and on that occasion David Allen asked one of his daughters, Mrs. Bowers, to come and stay with him and her mother. Mrs. Bowers refused to do so because the work was too hard; said she had tried it once before and could not stand it. That was her own testimony. Besides, she gave testimony in regard to respondent's services as follows:

"She [respondent] had her [Mrs. David Allen] to wash and her hair to comb and when pa was not able to help her she changed her clothes alone. She was about the same as a child to change, but of course she was heavy and more trouble. Of course she had the washing and ironing and everything of that kind to do. People afflicted make more washing and ironing than people who are not.

"Q. What do you know about Mrs. Lizzie Allen, the plaintiff, washing the bandages that were used by

your father on his varicose veins? A. Well, he used little squares, might say about that large (indicating) that he put salve on, that would stick to his limbs. He burned those. Outside of that he had cloths that he wrapped his limbs in—both of them—and of course sometimes it went through the wrapper that he wrapped his limbs in and those cloths were always to wash. I have been there when she washed them. He has come sometimes and stayed with me a week and I washed them. Outside of that his clothes were stained—his socks and underclothing. We made cloths about that large (indicating) square to use in the bed under his limbs and they were to wash.

"Q.   And she washed those? A.   Yes, sir.

"Q.   Were those cloths and his underclothing offensive? A.   At times they were. There were times that his limbs would heal over. I have dressed his limbs when he was sick and it would be fearful to dress them. I have done that when he had spells of fever before Lizzie was there. I never dressed them after she was there."

To induce this daughter to come and stay with him and his wife in case respondent left, David Allen offered to furnish everything for Mrs. Bowers' family to live on, but she declined the offer. He also told her he was to furnish everything for Lizzie (respondent) and she was to do the work; further, that he intended to compensate her, but did not say to what extent. Mrs. Bowers' testimony as to the character of the duties performed by the respondent and the diligence and fidelity with which she performed them, is corroborated by many witnesses and disputed by none.

In the face of such testimony appellant demurred to the evidence for the respondent and now assigns for error that the demurrer was overruled. The foregoing statement sufficiently disposes of the assignment and we will discuss it no further.

It is becoming customary for counsel to ask courts

of review to pass on such a point in every case, however overwhelming the evidence in favor of a plaintiff's cause may be.   Suffice to say, it would have been rank error for the circuit court to have sustained the demurrer.

The court excluded the will of David Allen when it was offered in evidence by appellant, and this ruling is asserted to have been erroneous.   The respondent was not named in the will nor does it contain anything which points to her.   It contains the provision mentioned that if any child to whom the deceased had made a bequest should be allowed a claim against his estate the bequest of such child should be diminished by the amount of the allowance.   Respondent was neither a child of David Allen nor was anything bequeathed to her; hence, she was neither by expression nor implication referred to in the will, which was incompetent as evidence to defeat her claim.   The case cited on this point by the appellant (Cowell v. Roberts, 79 Mo. 218) is one in which the will of the deceased was held competent as corroborative of the defense that the claimant, Susan Cowell, had occupied a position as a member of the decedent's family; but this ruling was based on the fact that she was named and provided for in the will.

The deposition of O. M. Stuart was received in evidence, appellant insists improperly.   In his deposition Stuart swore he was acquainted with David Allen in his lifetime and heard him say he expected to pay Lizzie and Jim (the respondent and her husband) for the kindness they had shown him; said he expected to give Lizzie and Jim the home place and had told Jim to go ahead and fix up the barn and put out apple trees as he would have the home place.   The argument is that this testimony was incompetent because it tends to prove a contract or intention to reward both the respondent and her husband, instead of her alone.   The deceased could not have rewarded both without rewarding the

respondent and his intention to reward both included her. The outcome was that neither was rewarded. The deposition was competent as bearing on the question of whether respondent's services were rendered gratuitously or with the understanding that she was to have remuneration. The endeavor of the deceased to get respondent and her husband to sign an instrument waiving any claim against his estate for the services they had rendered, was itself evidence that the deceased did not understand the services were being rendered as an absolute gratuity and without expectation of reward, as was also their refusal to sign the instrument. In fact, the proof is convincing that compensation was both promised and expected, though the prime source of such unfailing solicitude and tenderness as the respondent displayed for eight years is an affectionate heart. Notwithstanding the act referred to, David Allen heartily appreciated the respondent's conduct and so expressed himself. On one occasion he said to a neighbor, pointing to the respondent: "There is one of the best women that lives;" and after reading the testimony in her favor we are inclined to agree with him.

It is right to state that not all the decedent's children are opposed to respondent's demand.

Appellant excepted to an instruction the effect of which was that the jury might infer a promise to pay plaintiff for her services from all the circumstances of the case and the nature of the services rendered, but that the burden was on the respondent to show the promise. It is undoubted law that a promise to pay for the services rendered need not be proven, in a case like this, by positive testimony, but may be found by the jury from circumstances and facts detailed by witnesses. An instruction of the kind criticised has been approved in various decisions. Hart v. Hart, 41 Mo. 446; Reando v. Misplay, 90 Mo. 251; Ramsey v. Hicks, 53 Mo. App. 190; Hayden v. Parsons, 70 Mo. App. 493.

The jury's award of compensation to the respon-

dent for what she did for the deceased during nearly eight years, was $500, which is at the rate of a little over five dollars a month. Her claim is exceedingly meritorious; so the verdict can hardly be considered excessive, and as the cause was tried without reversible error the judgment is affirmed. *Bland, P. J.*, and *Reyburn, J.*, concur.