GREEN, Respondent, v. BUCHANAN, Appellant.

St. Louis Court of Appeals, March 3, 1908.

1. IMPLIED CONTRACT: Gratuitous Services: Evidence. In an action by a grandchild against her grandfather for services rendered during several years, evidence that the grandfather, several years prior to the time at which the alleged service was rendered, was curator for the plaintiff, filed settlements as such and received compensation for boarding and caring for the plaintiff, was not admissible as tending to show the status of the plaintiff at the time the alleged services were rendered.

2. ———: ———: Prima-Facie Case. In an action by a grandchild against her grandfather for services rendered, where it was shown that she was a member of his family at the time the services were rendered, it was necessary for the plaintiff to show that the services she rendered were rendered in expectation of payment and with the understanding on both sides that she should be paid; the evidence in this case fails to show such facts.

Appeal from Dunklin Circuit Court.—*Hon. James L. Fort,* Judge.

REVERSED.

*Wammack & Welborn* for appellant.

(1) The appraisement of personal property, petition for the sale of real estate, report of the sale of real estate, and the first, second, third and fourth annual settlements, admitted in evidence over defendant's objection, related only to transactions ending January 28, 1896, nearly four years before the rendition of first services sued for. They tend in no way to establish the status and intention of these parties, during the time the services sued for were being rendered, nor to establish any contract, express or implied, to pay for the services, and hence they tended to prove no fact properly at issue in this case, tended only to prejudice the minds of the jury, and the court erred in allowing them to be introduced in evidence. Lillard v. Wilson, 178 Mo. 153;

Penter v. Roberts, 51 Mo. App. 222. (2) The verdict is unsupported by any evidence, and the case should be reversed. Moore v. Hutcheson, 69 Mo. 429; Avery v. Fitzgeralds, 94 Mo. 207.

*Houck & Houck* for respondent.

"Where one performs necessary and valuable service for another, the benefit of which has been received and enjoyed by him, the law presumes an intention, upon the part of the person rendering the service to charge, and upon the part of the person receiving such benefit to pay the reasonable value thereof and raises a promise upon the part of the latter to pay such reasonable value." Kostuba v. Miller, 137 Mo. 174; 15 Am. and Eng. Ency. Law (2 Ed.), p. 1078. Appellant's instructions Nos. 2 and 3 were properly refused as respondent's status in his house was shown to have been that of a stranger and no evidence was offered to show that such condition had been changed. It is error to give irrelevant instructions. Dankers v. Mfg. Co., 102 Mo. 173; Neily v. Railroad, 107 Mo. 466.

GOODE, J.—Plaintiff, who is a grandchild of the defendant, instituted this action to recover the value of household and outdoor work done and performed by her for the defendant from January 1, 1900, to September 1, 1905, or 252 weeks, laying the value of the work at $1 a week and the total value at $250. Plaintiff's maiden name was Canady. Her mother was the daughter of the defendant. She lost her father in early childhood, when she was about two years old. On his death she and her mother and brother went to live with the defendant. Her mother died sometime in 1890, and after her death the two children continued to reside with their grandfather, the defendant, until a month or two before plaintiff's marriage, which occurred September 5, 1905. The evidence shows that until the death

of her grandmother, which occurred in 1901, plaintiff helped about the cooking and other household duties and afterwards did most of the household work. The uncontradicted evidence shows she was regarded as a member of her grandfather's family and that there was no understanding between them she was to be paid for her work. As to this plaintiff swore there was nothing ever said between the two about her receiving pay, but said she never knew whether she would charge or not; that she never said anything to him about charging him; did not know who first suggested to her to sue her grandfather, but this suggestion occurred after she was married; it was talked all around and she heard it talked. When asked if she had thought of it herself, she said: "A little," but she never said anything to him about it; that she did not bring her suit until her grandfather was about to leave this State for the Indian Territory, when she sent her attorney over to demand compensation from him. Such was the testimony of plaintiff as to the arrangement under which she lived with defendant and did work in the household, and no other witness was introduced in her behalf who testified as to the matter. The grandfather said plaintiff lived in his house about sixteen years; came there when she was two years old; defendant took care of the mother and the two children; when the mother was dying she asked him to continue to look after her children, which he promised to do and did; while plaintiff was in the family she worked around the place as one of the family. Defendant's wife died when plaintiff was about thirteen years old and afterward defendant's household consisted of his three sons and the two grandchildren, plaintiff and her brother; they all lived together and she was a member of the family; defendant maintained her to the extent of his means; she never said a word about charging for her services and never intimated anything of the kind until the day he sold his property preparatory to

removing to the Indian Territory. The record shows defendant had been appointed guardian and curator of his grandchildren, and in an attempt to make out a case for plaintiff, her counsel introduced four annual settlements of defendant as her and her brother's guardian and curator in which he had been allowed from seventy-five to a hundred dollars per annum for the board, clothing and washing of the two grandchildren, plaintiff and her brother; also some proceedings in the probate court resulting in the sale of a small piece of land belonging to them for $350. Counsel was further permitted, over defendant's objection, to prove the sale of this real estate occurred when plaintiff had in his hands $212 in money belonging to the minors. The latest of these annual settlements was for the year 1896, and the other three were for previous years. They had no relevancy to the issues to be tried and were improperly admitted. This action is for the value of work done long afterward. The settlements and the record regarding the sales of the land were received in evidence as proving plaintiff and her brother were not members of defendant's family, but that he was paid for their maintenance. But because a small sum was realized from their estate and applied toward their support while plaintiff was very young, has no tendency to prove she was not treated as a member of the family years later after her estate had long since been exhausted. Her own testimony proves she considered herself a member of the family and worked as such without any promise or expectation of payment. Plaintiff swore the reason she stayed in her grandfather's home was that she thought if she left, he was her guardian and would compel her to return, but does not say he told her he would do so. Nothing resembling a cause of action was established in this case. It was essential for plaintiff to show the services she rendered were rendered in expectation of payment and with the understanding on both sides that she would be paid.

[Fitzpatrick v. Dooley, 112 Mo. App. 165, 86 S. W. 719, and cases cited therein.]

The judgment is reversed. All concur.