ROBERT MABARY, Appellant, v. ELIZABETH MABARY, Executrix of the Estate of W. J. MABARY, Deceased, Respondent.

Springfield Court of Appeals, July 28, 1913.

1. **CONTRACTS: Implied in Fact, in Law.** Implied contracts are implied either in fact or in law. The former arises in cases where, according to ordinary course of business and common understanding, a mutual intent to contract is implied. The latter are mere fictions of law, arising in cases where there is no evidence of intention to contract but where in the light of the circumstances of the case and the acts, conduct and statements of the parties, the law imposes a duty to pay for a benefit conferred.

2. **ACTION FOR SERVICES: Evidence Reviewed: Executors and Administrators.** Evidence examined and reviewed in a proceeding by a son to establish a claim for services against the estate of the deceased father *held,* not sufficient to warrant a recovery.

3. **STATUTE OF LIMITATIONS: Mutual and Current Accounts: Provisions as to.** An account by an adult son, on which he sought to establish a claim against the estate of his deceased father, itemized claims for labor for two years and later claims for labor at intervals during subsequent years, until the father's death. Examined and *held,* that it was not such a mutual and current account as is contemplated by Sec. 1893.

R. S. 1909, which provides that a cause of action for the balance of a mutual and current account shall be deemed to have accrued from the time of the last item in the account.

Appeal from Hickory County Circuit Court.—*Hon. C. H. Skinker*, Judge.

AFFIRMED.

*W. L. Pitts* and *Rechow & Pufahl* for appellant.

(1) Under the evidence the case should have been submitted to the jury. Christianson v. McDermott's Est., 123 Mo. App. 448; Stone v. Troll, 134 Mo. App. 308; Ryan v. Hospes, 167 Mo. 342; Lillard v. Wilson, 178 Mo. 145; Taylor v. Hudson, 145 Mo. App. 377; (2) It was not necessary to prove an express contract. Guenther v. Berkict's Admr., 22 Mo. 448; Hart v. Hart's Admr., 41 Mo. 445; Cowel v. Roberts, 79 Mo. 218; Reando v. Misplay, 90 Mo. 251; Koch v. Hebel, 32 Mo. App. 107. (3) When plaintiff married and moved to himself the law indulges the same presumption that he was to be paid for his labor, etc., that it would a stranger. Lillard v. Wilson, 178 Mo. 145; Hart v. Hart's Admr., 41 Mo. 444; Sprague v. Sea, 152 Mo. 332; Lillard v. Wilson, 178 Mo. 153; Ryans v. Hospes, 167 Mo. 358; Christianson v. McDermott's Est., 123 Mo. App. 453; Fitzpatrick v. Dooley, 112 Mo. App. 165; Ireland v. Spickard, 95 Mo. App. 62; Penter v. Roberts, 51 Mo. App. 222.

*Henry P. Lay* for respondent.

(1) The law presumes that services rendered by a son for his father are rendered gratuitously. Lawrence v. Bailey, 84 Mo. App. 107; Penter v. Roberts, 51 Mo. App. 222; Louder v. Hart, 52 Mo. App. 377; Bercher v. Boemler, 204 Mo. 563. Cupp v. McCallister, 144 Mo. App. 111; Bercher v. Boemler, 204 Mo. 563;

Fry v. Fry, 119 Mo. App. 478. (2) The law never implies what the parties never intended. Savings Bank v. Aull, 80 Mo. 202. (3) There was not such a "running account" between the parties as will postpone the running of the statute of limitations as to any items more than five years old at the death of the deceased. Sidney v. Land Co., 187 Mo. 669.

ROBERTSON, P. J.—Wm. J. (Jasper) Mabary died in February, 1909, and on December 31, 1910, the plaintiff, his son, filed a claim against his father's estate in the probate court of Hickory county, as follows:

The estate of Wm. J. Mabary, deceased, to Robert Mabary, Dr.

| | | |
|---|---|---|
| 1892-3, to 24 months labor for deceased at $20 per month | $ 480.00 | |
| 1892-3, credit by one suit of clothes bought at Cross Timbers, | | $ 6.00 |
| 1892-3, other clothing furnished, | | 10.00 |
| 1894, 10 days work building fence at $1 per day, | 10.00 | |
| 1894, 8 cords wood furnished at $1.25 per cord, | 10.00 | |
| 1895, plowing corn; helping cut and put up 30 acres oats and 70 acres meadow, | 25.00 | |
| 1895, 6 days work building fence in Polk county, | 6.00 | |
| Winter 1896-7, hauling 200 saw logs, self and team 20 days, at $2.50, | 50.00 | |
| Fall of 1897, hauling rock and lumber and building material for house; self, wagon and four horses, 40 days at $5.00, | $ 200.00 | |
| 1898, amount due on set harness sold dec'd, | 25.00 | |
| 1898, credit one stack hay received, | | 6.00 |

| | |
|---|---:|
| 1898, 10 days work in harvest and threshing, | 10.00 |
| 1896, 10 days work in harvest and threshing, | 10.00 |
| 1897, 10 days work in harvest and threshing, | 10.00 |
| 1899, 10 days work in harvest and threshing, | 10.00 |
| 1900, 10 days work in harvest and threshing, | 10.00 |
| 1901, 10 days work in harvest and threshing, | 10.00 |
| 1902, cutting 45 acres wheat, self and three horses, at 25 cents, | 11.25 |
| 1895, amount paid Wm. Creed for gathering corn, | 5.00 |
| 1895, amount hay, self and team 4 days at $2.50, | 10.00 |
| 1895, credit cooking for hands while building plaintiff's house, | 5.00 |
| 1895, to stacking wheat, 2 hands while building house, | 5.00 |
| 1895, to threshing wheat, 2 hands while building house, | 5.00 |
| 1905, work on concrete building, | 7.00 |
| 1903, cutting 24 acres oats, self and team, at 25 cents, | 6.00 |
| 1903, cutting and putting up hay, | 10.00 |
| Winter of 1906-7, 250 bushels oats at 50 cents, | 125.00 |
| 1907, hauling lumber for barn, 4 horse team, | 5.00 |
| 1907, 15 days carpenter work on barn at $1.50, | 22.50 |
| 1908, 3 days carpenter work on barn and painting, on house at $1.50, | 4.50 |

| | |
|---|---:|
| Hauling wood for deceased for each winter from 1894 to 1907, inclusive, 14 winters at $5.00, | 70.00 |
| | |
| Total, | $1151.25 |
| Total credits, | 31.00 |
| | |
| Balance due, | $1120.25 |

To this claim the executrix, the widow of the deceased and the mother of the plaintiff, filed her answer as follows:

"Comes now the above named defendant and for her answer to plaintiff's amended demand denies each and every allegation, statement and item therein contained.

"And for further answer defendant says that the deceased, Wm. J. Mabary, and the plaintiff were parent and child, and while it is true that at times the plaintiff did perform some services for the deceased, such services were gratuitous.

"And for further answer defendant says that the deceased during his lifetime fully paid and compensated the plaintiff and all his valid claims.

"And for further answer defendant says that all items on plaintiff's demand prior to the item dated 'winter of 1906-7' are fully barred by the Statute of Limitations.

"And for further answer and as an offset to the plaintiff's demand the deceased, William J. Mabary, furnished to the plaintiff property and services aggregating a large amount, among which are the following items, to-wit:

| | |
|---|---:|
| 1893, one suit of clothes, | $ 16.00 |
| 1893, one suit of clothes, | 20.00 |
| 1894, wagon and harness, | 75.00 |
| 1894, 8 head of cattle, | 200.00 |

| | |
|---|---:|
| 1895, pasture for 9 cattle and 1 horse, 6 months at 50 cents, | 30.00 |
| 1895, land, | 800.00 |
| 1895, cash, | 25.00 |
| 1895-6, board for plaintiff and wife, three months, | 60.00 |
| 1897-8-9, board for plaintiff and wife and team during crop, | 72.00 |
| 1901, use of binder, | 6.25 |
| 1902, cutting 30 acres of wheat for plaintiff, | 8.50 |
| 1902, pasture for 2 horses April 28 to Nov. 1, | 6.00 |
| 1904, cutting 16 acres oats and 25 acres wheat, | 10.25 |
| 1904, board for plaintiff and hands, 32 days, | 48.00 |
| 1894, board for plaintiff and hands, | 3.75 |
| 1894, 32 days work, deceased and team in building plaintiff's house, at $2.50, | 80.00 |
| 1894, pasture 2 cows, 5 months, | 5.00 |
| 1894, hay for four horses from March to August 1, | 10.00 |
| 1905, 20 bushels of wheat at 75 cents, | 15.00 |
| 1905, paid for lumber, brick and window for plaintiff, | 5.60 |
| 1905, pasture for mare and colt and 2 cows, 6 months., | 9.00 |
| 1905-6, wintering colt, | 5.00 |
| 1906, pasturing yearling filly April 15, to Nov. 1, | 3.25 |
| 1906, board of plaintiff and hand 4 meals per day 40 days, | 30.00 |
| 1906-7, wintering filly, | 6.00 |
| 1907, pasture for filly May 1 to November 1, | 3.00 |
| 1908, pasture for mare and colt 4 months, | 2.00 |
| 1908, pasture for 8 cattle August 15, to November, | 12.00 |
| 1909, pasture for 6 head cattle and 1 mule, June 1 to Nov. 27, | 15.00 |
| 1909, corn planter, | 25.00 |
| Total, | $1606.60 |

"In addition to which deceased furnished to plaintiff much other property and services which defendant is not able to itemize."

The issues thus made were tried to the court without a jury in the probate court on April 21, 1911, and resulted in a judgment in favor of the plaintiff for the sum of one thousand dollars. The executrix appealed from that judgment to the circuit court where on November 11, 1911, on a jury trial, a verdict was directed by the court and returned in behalf of the executrix, on which judgment was rendered, and the plaintiff has appealed to this court.

It is admitted in the record that the plaintiff was married in December, 1893, and was twenty-one years of age on November 30, 1894. After plaintiff was married he lived about a quarter of a mile from his father, and in February, 1895, he went to Kansas and "made a crop there," came back in July, 1895, stayed a short time and attended writing school two weeks, returned to Kansas and finally returned to his father's home Thanksgiving Day, 1895, and he and his wife remained there until about the following May when his father gave him some land and helped him build a log house thereon. There was no tillable land on the tract given him by his father and plaintiff leased and farmed portions of his father's land for several years and also cut and cared for the hay thereon. In 1893 he received a part of the crop on his father's land and in 1894 he had twenty-five acres of it rented and put in corn and oats. Some time between 1896 and 1900 the deceased stated to one of the witnesses, who was negotiating with the plaintiff for his land, that he (the deceased) "would rather he (plaintiff) would not trade it off but would stay on it so as to be close to him and see after things and help him with the farm work and that if Robert would not trade off his farm he would not lose anything by it." In the fall of 1901 plaintiff put in a crop of wheat on the shares on his father's

land. During the years 1902 and 1903 plaintiff worked at his uncle's mill one and a half miles from his father's place. In 1904 plaintiff built a cement house on the tract of land his father gave him and in this work his father assisted him, and the same year plaintiff rented sixteen acres of his father's land and put it in oats. After plaintiff ceased to work at his uncle's mill he returned to his place near his father's home and kept his stock in his father's pasture, kept his horses there while he was raising crops, put his horses in his father's barn, and when his wife was away teaching school plaintiff took his meals at his father's home.

One of the witnesses testified that the father was talking to him about paying plaintiff and that the father stated that he "didn't have to pay him any money but that he would see that he got his pay anyhow." Another witness testified that he was talking to the father about the cost of rebuilding the barn and the witness said to the father: "You don't have to pay Robert anything, do you?" to which the father replied: "No, I don't have to pay him anything now, but I will make it right with him later." Another witness testified that "one year when I was working there with a lot of other hands putting up hay and we finished in the evening, Mr. Mabary came out to pay off the hands and paid them all but Robert and I. He made some remark that we would get our pay for it; he said, 'Well, you are around here all the time, I will make this right with you; you won't lose anything by this.'" There is also testimony tending to prove that plaintiff and his father exchanged work frequently.

We have not been directed to any testimony and we have not been able to find any by repeated reading of the record that discloses when these alleged conversations were had. Neither is there any testimony in the record, so far as we have been able to discover, which tends to prove what was the reasonable value of the services plaintiff claims to have rendered to his

father, except that there is one witness who says that he thinks the plaintiff worked two days four years prior to his father's death hauling wood and that at that time it would have been worth about a dollar and a half or two dollars per day. There is another witness who testified, without fixing any dates, not even the year, that he had seen plaintiff working at his father's farm, doing all kinds of work and at that time it was worth fifteen dollars per month. This witness also testified that "one year" plaintiff was putting up hay on his father's place and that others in the neighborhood were paying so much per day, but it may as well be presumed that plaintiff was putting up the hay on the shares as that he was doing the work for his father.

In the case of Lillard v. Wilson, 178 Mo. 145, 152, 77 S. W. 74, it is said: "Implied contracts are either implied in fact or in law. The first class arises in cases where according to the ordinary course of business and the common understanding of men a mutual intent to contract is implied. The second class are mere fictions of law, and arise in cases where there is no evidence of intention to contract but where, in the light of the circumstances of the case, the acts and conduct and verbal statements of the parties, the law implies a duty to pay for a benefit conferred." And on page 153 of that opinion the court said: "Of course there can be no recovery for services voluntarily rendered without expectation, at the time of rendition, of compensation therefor, or with the hope of being rewarded by will or otherwise, as a matter of generosity, for, under such circumstances, no legal or moral obligation arises. But 'it is well settled that where one performs services for another at his request, but without any agreement or understanding as to wages or remuneration, the law implies a promise on the part of the party requesting the service to pay a just and reasonable compensation, unless there is a family relation existing between the parties, and this remuneration is recoverable on a

*quantum meruit.*' So 'where services are performed by one for another, either with or without the latter's consent or knowledge, and he knowingly accepts and avails himself of those services, the general rule is that the law will imply a promise to pay a fair and reasonable compensation therefor.' " And again in that opinion, at page 156, in discussing the obligation arising between relatives for services rendered, there is quoted, with approval, the following: " 'The doctrine that after the attainment of majority, the promise, to support the obligation to pay, must be an express one, has not been accepted in this State. Notwithstanding the fact that family relationship in itself implies that the services are gratuitous and without the expectation of pecuniary reward, the promise to pay may be implied from any facts or circumstances which in their nature justify the inference of an actual contract of hire or an actual understanding between the parties to that effect.' "

Yet, in the case of Bircher v. Boemler, 204 Mo. 554, 562, 103 S. W. 40, in speaking of the obligation implied by the law when one relative rendered services for another, it is said: "But.even if the evidence that she would expect nothing for taking him be disregarded, the law presumes that services rendered by a daughter to her father are gratuitous, and, in the absence of an express promise of compensation for such services, plaintiff cannot recover." And again on page 563: "As plaintiff's claim was for the care and maintenance of her father, it must necessarily have been based upon his express promise and undertaking to pay her therefor during his lifetime, and as the proof only shows a promise by him to provide her compensation by his last will, plaintiff is not entitled to recover."

Considering these statements as abstract propositions, unconnected with the age and degree of family relationship of the claimant and the other facts in each particular case, it would appear that they are in conflict, turning upon the proposition that there must or

must not be an *express* contract. In the case of Stone, v. Troll, 134 Mo. App. 308, 311, 114 S. W. 82, it was held that even though there was no express contract between the father and son that the father should pay for the services rendered him by his son, the facts and circumstances in the case were held to have raised an issue sufficient to sustain a finding in favor of the son for the services rendered his father.

"It is undoubted law that a promise to pay for the services rendered need not be proven in a case like this, by positive testimony, but may be found by the jury from the circumstances and facts detailed by witnesses." [Allen v. Allen, 101 Mo. App. 676, 683, 74 S. W. 396.]

There are numerous authorities in this State which may be construed as holding that it is essential, in cases of this character, that an express contract be proved while others may be understood as holding otherwise, or that the express contract may be found from the circumstances in the particular case. [Fitzpatrick v. Dooley, 112 Mo. App. 165, 171, 86 S. W. 719; Hayden v. Parsons, 70 Mo. App. 493, 497; Ryan v. Lynch, 9 Mo. App. 18, 20; Brock v. Cox, 38 Mo. App. 40, 46; Lawrence v. Bailey, 84 Mo. App. 107, 110; Woods v. Land, 30 Mo. App. 176, 181; Penter v. Roberts, 51 Mo. App. 222, 227; Winebremer v. Eberhardt, 137 Mo. App. 659, 662, 119 S. W. 445; Bosard v. Powell, 79 Mo. App. 184, 187; Finnell v. Hooch, 59 Mo. App. 209, 212; Ramsey v. Hicks, 53 Mo. App. 190, 195; Louder v. Hart, 52 Mo. App. 377, 381; Fry v. Fry, 119 Mo. App. 476, 479, 94 S. W. 990; Green v. Buchanan, 129 Mo. App. 297, 300, 108 S. W. 607; Cupp v. McCallister, 144 Mo. App. 111, 112, 129 S. W. 435; Kostuba v. Miller, 137 Mo. 161, 175, 38 S. W. 946.]

In the case of Hodge v. Hodge, 11 L. R. A. (N. S.) 873, there is appended an exhaustive note upon the question of claims for services wherein relatives are involved, and at page 908 we find a discussion from which we conclude that there is a conflict generally over this

country and in the decisions upon this particular point, the courts being controlled more, apparently, by the facts under adjudication in each particular case than by a desire to lay down any fixed rule of law for all cases.

We are of the opinion that there were no facts developed in this case, even though it had been a suit between strangers, whereby the jury could have possibly made any finding for any sum in behalf of plaintiff. The testimony all goes to the proposition in a general way that the plaintiff was seen at various times working on his father's place and doing chores, but from the fact that the plaintiff was renting portions of his father's land and farming it; that he lived with his father awhile immediately after he was married and later when his wife was teaching school, and kept his cows on his father's pasture and fed his horses there, we think the inference is as fairly deducible that he was, when working at his father's home, looking after his own interest as that he was rendering services for his father for which he expected to be compensated or for which as a matter of right he should receive pay.

There is no testimony that plaintiff kept any book account of his transactions with his father, and it is evident that he had no data from which to render the account filed by him in the probate court. It is apparent from the evidence, as well as from an observation of the uniformity of the items in plaintiff's account under the years 1898 to 1901, both inclusive, that the account there rendered is not such an account as under section 1893, Revised Statutes 1909, would save any item of plaintiff's claim, more than five years prior to its filing, from the Statute of Limitations. [Sidway v. Land & Livestock Co., 187 Mo. 649, 669, 86 S. W. 150; Chapman v. Hogg, 135 Mo. App. 654, 661, 116 S. W. 492.] It is also obvious that the account filed by the executrix was simply arranged by her in anticipation

of defeating any claim that might be established by the plaintiff.

At the time the plaintiff went to Kansas in 1895 all of the dealings and transactions between him and his father ceased, and the same is also true with reference to the years 1902 and 1903 when he was working at his uncle's mill. Some witnesses testified that plaintiff, during the time he was residing at the mill, went to his father's home daily but there is no testimony that we are able to find that discloses that he performed any service for his father on those visits.

There is a statement by one witness, as above noted, who says he worked with plaintiff on his father's farm for a few days four years prior to the father's death hauling wood and that such services were worth a dollar and a half or two dollars per day. This, it will be observed, was more than five years prior to the date when plaintiff's claim was filed and consequently if there was any agreement for those specific services, if rendered, this action is barred as to that item. The other witness who stated that he had seen plaintiff working at his father's farm doing all kinds of work and that his time was worth fifteen dollars per month, fixed no time and there is nothing in the case from which the jury could have determined under the facts in this case whether the plaintiff was working for himself or for his father, and whether he worked a few hours or a few months.

While some of the authorities say that claims of this character should be carefully scrutinized to the end that the estate of deceased persons may not be dissipated or diverted into improper channels, we have diligently searched this record for testimony and the authorities for reasons which might justify the submission of the plaintiff's case to the jury to be decided in view of the testimony offered by him, but we are unable to conclude that this case should be again tried.

173 Mo. App. 29

We have considered all of the objections in behalf of the plaintiff relative to the admission and exclusion of testimony and are clearly of the opinion that there is no reversible error in that regard.

The judgment of the trial court is affirmed.    All concur.