## JACKSON v. MULL.

PARENT AND CHILD — CONTRACT FOR MAINTENANCE OF CHILD — EVIDENCE — REVIEW — STATUTE OF LIMITATIONS.

1. In an action brought against a father upon a claim for compensation for the care, custody, and nurture of a minor child, the petition alleging that the services were performed at the request of the defendant, it is incumbent upon the plaintiff

to prove that such services were performed upon such request, and the burden of proof does not rest upon defendant to establish his allegation that the services were voluntarily performed.

2.   In the absence of a request from the father that a relative assume the care of his minor child, although he may have assented thereto, no promise to pay for such service can be implied.   The mere moral obligation of such a parent to support his child affords no legal inference of a promise to pay for its support without his request; particularly so where there has been no culpable omission on his part.

3.   Where the testimony is conflicting, the finding of the trial court should not be disturbed unless the appellate tribunal is convinced that such finding is clearly erroneous or against the great weight of the evidence.

4.   The testimony being reviewed, it is held that the trial court was warranted in finding that there was no liability on the part of the father to pay for services rendered in the care of his child by its grandmother.

5.   Where a contract exists between a father and another providing that the latter shall from time to time, according to the necessities of the minor child of the former, furnish and provide her with clothing and other necessaries, the expenditures to be repaid by the father to the other party; or where the father has made a general request that the other party keep the child well and suitably provided in the respect indicated; the transaction as to any expenditures under such contract or request will be a continuing one, and each item of expenditure will relate back to the original agreement or request, and thus each item will be related to each other, and the statute of limitations will not run except from the date of the last item.

6.   Where, however, the father merely consents to retain a liability to clothe, support, and educate his child, so that no other person could do so and recover therefor unless he omitted such duty, no item of expenditure for necessities furnished the child by another owing to such omission of duty will maintain a relation to any other item, and in such case the statute of limitations will run as to each item of expenditure from the date thereof.

7.   The evidence in this case held to disclose an understanding that plaintiff should from time to time procure for the child

of defendant such things as she needed and that the defendant would pay to plaintiff the expense thereof. Under such circumstances, it is held that the transaction is a continuing one, and that no part of plaintiff's claim is barred by the statute of limitations.

[Decided November 19, 1895.]

ERROR to the District Court for the county of Laramie, Hon. RICHARD H. SCOTT, Judge.

This was an action brought by Mary Jackson against Braxton P. Mull upon two causes of action, the first of which was a claim for work, labor, and services of the plaintiff in the care, custody, and nurture of Stella Mull, a minor child of the defendant. The second cause of action was a claim for money expended for necessaries purchased for the child, such as clothing, shoes, and wearing apparel, school-books, paper, and other materials to enable her to attend school, and medical attendance. In the district court judgment was rendered for defendant upon the first cause of action, and for the plaintiff upon the second cause of action, for a portion of her demand, the remainder being disallowed on the ground that action thereon was barred by the statute of limitations. Plaintiff prosecuted error. The material facts are stated in the opinion.

*W. R. Stoll*, for plaintiff in error.

The services of plaintiff were continuous. The agreement between the parties contemplated continuous services, and a continuous furnishing of necessaries to the child. The services were performed, and the necessaries provided, under and by virtue of a contract made at the death-bed of the child's mother, and the contract was performed by the plaintiff with fidelity, and without objection from defendant during the entire period of infancy and until the girl became old enough to be married or perform a woman's work. The statute of limitations does not run under such conditions. (Angell on Lim., 120; Frankoviz,

v. Ireland (Minn.), 26 N. W., 225; Moser v. Crooks, 32 Ia., 172; Schoonover v. Vachon, 121 Ind., 3; Gould v. Whitmore, 79 Me., 383; Hall v. Wood, 9 Gray, 60; Schoch, Adm'r., v. Garrett, 69 Pa., 144; Skyrme v. O. M. & M. Co., 8 Nev., 218; Schmieding v. Ewing, 57 Mo., 78; Lamb v. Hanneman, 40 Ia., 41; Carroll v. Mc Coy, id., 38; Clery v. Burns, 53 Miss., 171; Carter v. Carter, 36 Mich, 207; Hillebrands v. Nibbelink,' 40 id., 646; Wendeling v. Besser, 31 Ia., 248; Graves v. Pemberton, 29 N. E., 177.)

*Edgar W. Mann*, for defendant in error.

There appears to have been no actual agreement or concert of minds between the parties to this case, and their relations do not appear to have been of a friendly character. Defendant denies making any agreement as alleged by the plaintiff. Under all the circumstances, there was nothing more than an implied contract to pay such an amount as the plaintiff might expend for the child for necessaries, and an action might have been brought at the end of the first year. Where an account only exists on one side, and is composed of many items contracted and made at different times, the statute of limitations will run from the date of each item, unless agreed and understood by both parties that the same is to be kept open and continue as one account. (Wood on Lim., 1st. Ed., 120, 278; Angell on Lim., 6th Ed., 148; Kimball v. Brown, 7 Wend., 321; Coster v. Murray, 5 Johns, Ch., 522; Crum v. Higold, 32 Ill. App., 282; Thompson v. Brown, 50 Mo. App., 314; Bennett v. Davis, 1 N. H., 19; Miller v. Colwell, 5 N. J. L., 577 or 665; Buntin v. Lagow, 1 Blackf., 373; Adams v. Patterson, 35 Cal., 122; Davis v. Gorton, 16 N. Y., 255; Mims v. Sturtevant, 18 Ala., 359; Butler v. Kirby, 53 Wis., 188; Mosgrove v. Golden, 101 Pa. St., 605.) If the right to recover is based upon an entire contract, the action should not be brought until the contract is fully performed. (Davis v. Maxwell, 12 Metc, 286; Thayer v.

Wadsworth, 19 Pick., 349; Stark v. Parker, 2 id., 267; Jacks v. Phillips Co., 25 Ark., 64; Isaacs v. Mc Andrew, 1 Mont., 437; Larkin v. Buck, 11 O. St., 561; Allen v. Curles, 6 O. St., 505; Wood on Master & Serv., 84; Bank v. Irr. Dist., 40 Pac., 45.)

POTTER, JUSTICE.

In this case the petition of Mary Jackson, the plaintiff, alleged as a first cause of action that Braxton P. Mull, the defendant, was indebted to her in the sum of eighteen hundred and seventy-two dollars for work, labor, and services in the care, custody, and nurture of one Stella Mull, minor child of the defendant, performed at the request of the defendant between the 16th day of November, 1879, and the 16th day of November, 1892, a period of thirteen years; and for a second cause of action, that during the same period of time the plaintiff at the request of the defendant provided for said child necessaries for her use; to wit, clothing, shoes, and wearing apparel to the value of one thousand five hundred and sixty dollars, school-books, paper, and other materials necessary to enable said minor to attend school, to the value of seven hundred and two dollars, and medical attendance to the value of one hundred dollars, all of the value of two thousand three hundred and sixty-two dollars. It is stated in the petition that no copy of an account for the services thus performed or of the necessaries so furnished is attached, for the reason that no account was kept of the same; the divers expenditures having been paid for in cash at the time the articles were furnished and the expenditures made.

The defendant in his answer admitted the performance of the work, labor, and services, but denied that they were performed at his request; and alleged as a separate defense that they were performed voluntarily upon the part of the plaintiff upon the sole consideration of the benefit the society of said child and her services would be to the plaintiff. He also admitted the furnishing certain

necessaries, without the specification of their nature or character, but not of the value alleged in the petition, and denied, every other allegation contained in the second cause of action. As a separate defense to said second cause of action it is also alleged that the said necessaries were furnished by the plaintiff voluntarily and not upon request of the defendant, but upon the undertaking of the plaintiff to keep and maintain the said child at the expense of the plaintiff. The statute of limitations is pleaded to both causes of action for any claim of the plaintiff accruing prior to the 10th day of January, 1887. The case was tried to the court without the intervention of a jury, and upon the testimony the court found generally for the defendant upon the first cause of action, and that upon that cause of action the plaintiff take nothing. Upon the second cause of action the finding was for the plaintiff, except as to so much of her claim which accrued prior to January 10, 1887, which it was found was barred by the statute of limitations, and she was allowed eight dollars per month from that date until the commencement of the suit for clothing, shoes and wearing apparel furnished by her to said child, and a separate allowance was made for school-books and stationery, and judgment for the total amount with the costs of the action rendered in favor of the plaintiff. She assigns error in the finding and judgment upon the first cause of action, and also upon the second cause of action, contending that the court erred in holding any of the claim to be barred.

The plaintiff is the grandmother of the child. When the mother of the child, the late wife of the defendant, who was the daughter of the plaintiff, was lying at her home in this county sick, and shortly before her death, she, it seems quite clear from the testimony, expressed the desire that her mother, the plaintiff, should take the child Stella, who was then young, and that the defendant assented to it. This much is apparently conceded. The defendant admits and so testifies that his wife told him that she had given Stella to her mother, and further that

he assented to whatever arrangement he understood as having been made, to pacify his wife. The plaintiff, Mrs. Bailey, one of her daughters, and Mrs. Davidson each testify respecting certain conversations, and it is claimed that there were two between the mother of Stella, Mrs. Jackson, and Mr. Mull. These conversations were denied by the latter, and it was otherwise attempted to be shown that Mrs. Davidson was not present at any of the times when it is alleged the conversations occurred.

Mrs. Bailey says, in substance, that her sister wanted him (Mr. Mull) to support the child, give her a good education, and her mother (Mrs. Jackson) was to look after the child, make her home the home of the child, and that Mr. Mull was to pay the expense. When asked what Mr. Mull said, she replied: "He was willing, he consented "to it." She further testified: "She wanted my mother "to take the child and take care of her, clothe and care "for her as if she was her own child as long as she "lived." And again: "To take care of her until Stella "married or my mother died, then she wanted my sister to "take her." And being again asked what Mr. Mull said, she testified that he said, "Oh! Aggie, I will do any- "thing."

Mrs. Jackson testified that the subject was mentioned to her on two occasions. That Mrs. Mull called her husband to the bed and wanted to know how it was with him about Stella; that she wanted her mother to take her, raise her, and care for her; that she said, "Charlie, you must educate and clothe Stella," and that he said he was perfectly willing to do everything. She testified further in answer to questions of counsel: "She wanted me to "raise Stella and care for her; I told her I would if Charlie "was willing," and when asked what Mr. Mull said: "I "remember very well; he was perfectly willing to do what- "ever his wife said; she made the arrangement about Stella, "and he was willing." As to her exact words she testi- fied: "She said in so many words that she wanted me to "take Stella to raise and care for her; she said, you must

"remember, Charlie, you must clothe, educate, and provide "for her."

Mrs. Davidson's testimony was to the same effect except that she adds what neither of the other witnesses refer to, that he was to pay Mrs. Jackson what he could for raising the child and taking care of her.

Mrs. Jackson herself does not testify to any direct statement having been made by Mr. Mull that he would compensate her for her personal services in the care and nurture of his child; but it is urged that the arrangement as shown by the conversations testified to by the plaintiff and her daughter, Mrs. Bailey, amount to an express contract whereby the father had agreed to pay not only for necessaries furnished to, but for the personal care of the child. It appears that within a few years after the death of Stella's mother, Mr. Mull remarried and established his home in the neighborhood where he had lived before, having in the meantime kept his place, but rented it to others, and we gather from the testimony that his headquarters before his second marriage were there. Both Mr. Mull and his wife testified that after his second marriage they wanted the child to live with them, and were willing to keep and care for her and support her; that on one or two occasions a request was made for her of Mrs. Jackson, who did not receive it very kindly; however that may be, the father instituted no proceedings to obtain her custody, and hence if there had been such an express contract as claimed, he would not be relieved from liability by the mere making of such request — at least, that seems to be the view best sustained by the authorities. Stella did occasionally, during the school vacations, visit her father, and sometimes remained as long as six weeks.

I have as briefly as possible reviewed the material portions of the evidence affecting the nature of the arrangement under which the plaintiff at first assumed the care of the child of defendant, and it must be apparent that it is at the best not very satisfactory. We can not assent to the proposition of counsel for plaintiff in error that defend-

ant had the burden of establishing by a preponderance of
the evidence that the services of plaintiff were performed
voluntarily.   The petition alleges and it was incumbent
upon the plaintiff to prove, in order to maintain her case,
that such services were performed at the request of the
defendant.   The rule of law is that in the absence of a
request from the father that a relative assume the care of
his minor child, although he may have assented thereto,
no promise to pay for such service can be implied.   The
mere moral obligation which such a parent is under to
support his child affords no legal inference of a promise
to pay for its support without his request; certainly this is
so where there has been no culpable omission on his part.
Chilcott v. Trimble, 13 Barb., 502; Duffey v. Duffey, 44
Pa. St., 399; Jordan v. Wright, 45 Ark., 237; Burns v.
Madigan, 60 N. H., 197; Freeman v. Robinson, 38 N.
J. L., 383; Gordon v. Potter, 17 Vt., 348; Shoulers
Domestic Relations, Sec. 241; McMillen v. Lee, 78
Ill., 443.

It will be observed that there is not only a direct con-
flict in the testimony between the defendant and the plain-
tiff and her witnesses, but that one of the latter goes much
further than the others in respect to the existence of a
contract for compensation for the care of the child, and in
that respect there is an apparent conflict between the
plaintiff's witnesses.   To disturb the finding of the trial
court upon the cause of action seeking recovery for such
services, we should be convinced that such finding is
clearly erroneous or against the great weight of the evi-
dence.   Edwards v. O'Brien, 2 Wyo., 474.   There is
certainly abundant testimony to sustain the finding that
there was no express contract, as well as no such request
upon which can be implied a promise to pay for the care
bestowed upon the child by the plaintiff.   The court could
well find that whatever contract was made it was not
understood that the plaintiff was to receive compensation
for her services; that although the defendant may have
requested plaintiff to take charge of his child, a promise

to pay 'for the mere service can not be implied for the reason that the request did not stand alone but was accompanied by a promise respecting the liability of the defendant which defined the limits thereof, which we refer to in the discussion of another branch of the case further on; that the parties did not, at the time, contemplate a money allowance to plaintiff for the service rendered in and about the custody and nurture of the child, and that the plaintiff had no expectation of such a reward. It is not only possible for the evidence, giving due weight to the testimony of plaintiff and her witnesses, to be so construed, but it is a very reasonable view to take of it. We would not feel impelled therefore to interfere with such finding of the learned judge who presided at the trial, and do not perceive any good reason for reversing the judgment so far as the first cause of action is concerned.

The conclusion arrived at by the learned judge at the trial upon the second cause of action was that the defendant was liable to the plaintiff for her expenditures for such necessaries as were specified in the petition. This evidently resulted from a construction of the evidence, to which, upon the whole, it is susceptible; viz., that notwithstanding the father had consented that the grandmother should have the custody and care of the child, he agreed at the time to clothe, provide for, and educate her; in other words, that the effect of the conversations and arrangement thereby made was that he should not be relieved from his ordinary liability to suitably provide for his child although she was not to remain under his immediate care. Our opinion is that the court took a very proper view of the evidence in this respect, but the difficulty arises regarding the application of the statute of limitations. The finding complained of is that all of the claim of plaintiff for such necessaries furnished prior to January 10, 1887, was barred by the statute. The question is a close one, as it depends for its solution upon a determination of the exact meaning, purport, or legal effect of the contract as shown to have been entered into by means of the conversations

referred to, or the liability to be inferred therefrom and the other attending circumstances. We think there is no doubt that had it clearly appeared, or had it been clearly expressed in a contract between the parties, that the plaintiff should from time to time, according to the necessities of the child, furnish and provide her with clothing, wearing apparel, and other articles in question, and the defendant should repay to her any such expenditures; or that the defendant had made a general request that the plaintiff keep the child well and suitably provided in the respect indicated; and in either such case the plaintiff complied therewith, the transaction would have been a continuing one; each item of expenditure would then relate back to the original agreement or request and thus each item would be related to each other and the statute would not run except from the date of the last item. It is in proof that the plaintiff for thirteen years, from the time when the child was less than two years old, kept her well clothed and provided with necessary school books and stationery. What was the purport of the agreement of defendant? Did he merely assent to retain a liability to clothe, support, and educate his child so that no other person could do so and recover therefor unless he omitted such duty? If so, then it would seem that no item would have any relation to any other, and the term of the statute must be computed from each item; and in such case the finding of the court would be a correct one. We have carefully studied the testimony, and while it is not as satisfactory as might be desired, we are of the opinion that owing to the natural relation of the parties and the arrangement made concerning the custody of the child, it was the expectation of all parties at the time that the plaintiff should in the first instance make any purchases necessary for the child, and that the defendant would pay her therefor. Mrs. Bailey says: "My mother was to look after the child, "make that her home; Mr. Mull was to pay the expense." And again: "She (Mrs. Mull) wanted my mother to take "the child and take care of her, clothe and care for her as

"if she was her own child as long as she lived." Also: "He (Mr. Mull) said he would support and clothe her and "give her good schooling." In the nature of things the plaintiff would hardly feel called upon to first request the defendant in each instance to obtain something the child might require before procuring it herself. Neither could he have comtemplated such a course of proceeding. Most of the time they resided some fifty miles apart, and he very seldom called to see either the child or its grandmother, and it seems never made any inquiries about the child's wants while she was with the plaintiff, except, perhaps, during the first few months after the death of his wife. In view of the conduct of the parties and what was said when the arrangement was originally made, I think it must be held that the purport and legal effect of the understanding was that Mrs. Jackson should from time to time procure for the child such things as she needed, and that the defendant would pay to her the expense of the same. Under such circumstances the transaction is continuing and no part of the claim of plaintiff was barred by the statute of limitations. For the reasons expressed in this opinion, the judgment of the district court upon the first cause of action is affirmed, and upon the second cause of action is reversed, and the case will be remanded for a new trial upon the issues raised upon the second cause of action.

GROESBECK, C. J., and CONAWAY, J., concur.