NEVADA ALLEN, Plaintiff-Appellant, v. MOSES B. ALLEN, Defendant-Respondent, No. 43874—270 S. W. (2d) 33.

Division Two, July 12, 1954.

*Louis W. Krings* for appellant.

956

*Don C. Carter* for respondent.

BARRETT, C.—Formerly, the plaintiff, Nevada Allen, and the defendant, Moses B. Allen, were husband and wife. They were divorced in 1942, and the former wife instituted this action, in 1952, against her former husband to recover the sum of $9225, which the

plaintiff alleges she had personally advanced, at the rate of $75 a month, for the care and support of their minor daughter. Julia Ann Allen, now a high school student sixteen years of age. In her petition she alleged that it was the legal duty of her former husband to support their daughter and though he had frequently been requested to do so had refused to fulfill his obligation in this respect, except that throughout the years he had advanced the sum of $675 for which she gave him credit and asked for a judgment of $8550. In answer to her petition the former husband denied that the $675 was an advance for the support of the child and affirmatively stated that the sums were in fact voluntary gifts to the child. He pleaded that any claim for support and maintenance of the child prior to June 30th, 1947 was barred by the five-year statute of limitations, V.A.M.S., Sec. 516.120. He pleaded defensively to the entire claim that "at the time the divorce was granted the plaintiff, on March 6th, 1942, * * * it was mutually and orally agreed between plaintiff and defendant in that action, that if this defendant would not contest the care and custody of their then infant child, Julia Ann Allen, but would permit the Court to award the care and custody of said child to this plaintiff, that in consideration therefor, the plaintiff, mother of said child, would care for and maintain said child and would not ask the Court for any support or maintenance for said child. That in compliance with said agreement, the Court did award the care and custody of said child, to the plaintiff, in such divorce action, and did not award plaintiff any support or maintenance for said child. That by reason of said agreement had between plaintiff and defendant, as aforesaid, and the action of the Court taken on such agreement, the defendant is not indebted to the plaintiff in any sum whatsoever for the support and maintenance of said child, Julia Ann Allen."

Upon the trial of the cause, without a jury, the circuit court found the issues for the defendant and entered a general judgment against the plaintiff. Since this ▮ was a court tried case, it is the duty of this court, upon the plaintiff-wife's appeal, to review the cause anew upon its merits, "as in suits of an equitable nature," and to particularly consider the sufficiency of the evidence to support the judgment in any respect, and, finally, to enter such judgment as the trial court ought to have given "as to the appellate court shall seem agreeable to law." V.A.M.S., Secs. 510.310, 512.160; Supreme Court Rules 3.23, 3.27.

The factual background of this litigation is that the plaintiff and the defendant, residents of Columbia, were married in 1933. Julia Ann was born in 1936, and the parties separated in June 1940. In 1942 the wife instituted an action for divorce, the husband entered his appearance, paid the attorney's fee, and the wife was granted a divorce and the custody of Julia Ann. The divorce decree, however, made no provision for the maintenance of the child, and there was no

reference in the decree to a property settlement or to any agreement respecting the custody and maintenance of the child. In 1942, on the same day, the plaintiff and the defendant married again, the plaintiff's husband has since died and she, apparently, has resumed the name of Allen. Since 1942 the plaintiff has been employed as a cashier in a Milgrim store in Kansas City and has provided a home and support for the child, Julia Ann. After the institution of this suit Mrs. Allen also sought to modify the divorce decree as to future support for the child and the parties have made some disposition of that action, and the husband is now paying $50 a month for the maintenance of the daughter.

In these circumstances, the wife obtaining a divorce and custody of the child, the decree making no provision for the maintenance of. the child, the former husband does not question the general rule that, independently of the maintenance provided in the divorce statutes (V.A.M.S., Sec. 452.070), he owes the duty and obligation imposed by the common law to support his child. And that under the rule his former wife may maintain an independent action against him and recover a reasonable sum for her expenditures for necessary support furnished the child. Kelly v. Kelly, 329 Mo. 992, 47 S. W. (2) 762; Marley v. Marley, 356 Mo. 870, 204 S. W. (2) 261; Broemmer v. Broemmer, (Mo. App.) 219 S. W. (2) 300; annotations 15 A.L.R. 569, 81 A.L.R. 887. It is his contention, since the former wife's claim is for *past* support, that she is bound by the agreement she made with him prior to the divorce "that she would not ask for any support and maintenance for said child, if respondent would allow the court to award to her the *sole* and *exclusive* care and custody of the child, and also in consideration of a settlement of property rights." He concedes that they could not have made a binding agreement as to future support of the child (Kershner v. Kershner, 202 Mo. App. 238, 216 S. W. 547; Messmer v. Messmer, (Mo. App.) 222 S. W. (2) 521), but he contends, as pleaded in his answer, that as to *past* support they could and did make a valid and binding agreement, and property settlement, which permitted the court to award the wife "*sole* and *exclusive* custody of said child to appellant, that in consideration therefor, appellant would not ask for any support or maintenance for the child."

In the first place, we lay aside the doubtful validity of the essence of the contract as pleaded and testified to by the husband; that is, in so far as its purpose was to irrevocably contract away the child's custody, or to permanently relieve the father of his legal obligation to support the child. In this connection see and compare: Jones v. Jones, 325 Mo. 1037, 30 S. W. (2) 49; Meredith v. Krauthoff, 191 Mo. App. 149, 177 S. W. 1112; Marks v. Wooster, (Mo. App.) 199 S. W. 446; Hayes v. Hayes, (Mo. App.) 75 S. W. (2) 614. It is assumed, for the purposes of this opinion, that they could make

a contract, valid as between themselves, concerning the child's maintenance (Maxwell v. Boyd, 123 Mo. App. 334, 100 S. W. 540; Semon v. Ilgenfritz, (Mo. App.) 26 S. W. (2) 836), and bargain as to her custody "if the performance of the bargain is for the welfare of the child." Restatement, Contracts, Sec. 583; 17 Am. Jur., Sec. 728, p. 546; 27 C.J.S., Sec. 311, p. 1177. It ▮▮▮ must be noted, however, that in the Marks, Maxwell and Semon cases the consideration for each of the agreements was the husband's support of his child. For past support, or, more accurately, in discharge of the wife's independent, personal claim against her husband for furnishing necessary support and maintenance to a minor child, the husband and wife may validly settle the husband's obligation. Kelly v. Kelly, 329 Mo., l. c. 1004, 47 S. W. (2), l. c. 768; La Rue v. Kempf, 186 Mo. App. 57, 171 S. W. 588; Goth v. Goth, 237 Mo. App. 360, 167 S. W. (2) 384; Cervantes v. Cervantes, 239 Mo. App. 932, 203 S. W. (2) 143. And the decisive question upon this record is whether they did, as a matter of fact, validly settle that obligation.

Mrs. Allen denied that they had any such contract or agreement. The lawyer who represented Mrs. Allen had no independent recollection of the case, or of a property settlement, and he had no record indicating that there had been a property settlement or agreement between the parties relating to any subject. The notes in his file set forth the grounds for the divorce, the dates of the marriage and separation, the facts concerning Julia Ann, and that there was to be no maintenance, no alimony and no attorney's fees and, inferentially, that care and custody of Julia Ann was to be awarded the wife. When Mrs. Allen's petition for a divorce was heard, she testified, among other things, to the following: "Q. You are asking the court for the care and custody of this minor child? A. Yes, sir. Q. You and your husband have made an agreement on the distribution of property and the care of this child? A. Yes, sir. Q. You are not asking the Court for any alimony, or for any order for maintenance of the child? A. No."

In this case Mr. Allen testified that prior to the divorce he and his wife entered into an oral agreement with respect to the custody and maintenance of Julia Ann. The agreement, as testified to by him, was "If I would give her full custody of the child she wouldn't ask for any maintenance or alimony," and he would not request part-time custody of the child. As to a property settlement, he testified, "Q. I will ask you if you had agreed on your property settlement? A. Yes, we had agreed on that. Q. How did you settle your property settlement, how did you all agree on that? A. Well, it was settled. She took what she wanted and left me what was left. * * * Q. And didn't you agree, in this settlement, that what she took was hers and what was left would be yours? A. That's right."

In considering his claim of an agreement, it must be noted in the first place, that even he does not claim to have personally made any provision for the child's maintenance. When the divorce was granted Mr. Allen was unemployed and, so far as appears, had no income, and neither he nor his wife had any property other than household goods. And, it was the household effects which he says they settled by her taking "what she wanted and left me what was left." But that division of property, however it was accomplished, was when they separated in June 1940 and had nothing to do with either the child's custody or maintenance. Basically, his claim is that in consideration of his agreeing to his wife's custody of the child she agreed to support and maintain the child and, as he pleaded in his answer, "would not ask the court for any support or maintenance for said child," in the divorce proceeding. Aside from the doubt as to its essential validity (Gardine v. Cottey, 360 Mo. 681, 693, 230 S. W. (2) 731, 738), this basic agreement is subject to the interpretation that, in addition to transferring the custody of the child from one parent to the other (Restatement, Contracts, Sec. 583(2)), it was also supported by the inadequate consideration of the mere attempt to relieve the husband of his duty to support his child. Van Dyke v. Van Dyke, 106 N. Y. S. (2) 237; Jones v. Jones, supra. There is no evidence from which it is a fair or reasonable inference, and it cannot be inferred from the alleged agreement itself, that the parties had in contemplation the discharge or settlement of the husband's common law obligation to support his child, or, conversely, ■ the wife's independent right to enforce reimbursement for past support and maintenance furnished by her. In short, this record does not support a finding of a valid agreement irrevocably settling the wife's independent, personal claim for past support furnished the child. Cervantes v. Cervantes, 239 Mo. App., l.c. 938, 203 S. W. (2), l.c. 146; Winner v. Schucart, 202 Mo. App. 176, 183, 215 S. W. 905, 908; Marley v. Marley, 356 Mo. 870, 204 S. W. (2) 261. Despite the oral agreement, the husband's common law obligation and liability to his wife remained unless partially barred by the statute of limitations.

■ The appellant contends that the husband's obligation is a continuing one, that her claim for the child's support constitutes an extant, open, running account and, therefore, her cause of action is "deemed to have accrued from time of the last item in the account" (V.A.M.S., Sec. 516.160), and so the five-year statute of limitations —"All actions upon * * * obligations or liabilities, express or implied" (V.A.M.S., Sec. 516.120(1))—is inapplicable. Lowenstein v. Widdicomb, (Mo. App.) 52 S. W. (2) 1044; Miller v. Richardson, (Mo. App.) 56 S. W. (2) 614; O'Shaughnessy v. Brownlee, 229 Mo. App. 342, 77 S. W. (2) 867. In similar suits, it has been said that a wife's claim for support "is in the nature of a debt to her from the

husband.'' Kelly v. Kelly, supra; Cervantes v. Cervantes, supra. In Bennett v. Robinson, 180 Mo. App. 56, 165 S. W. 856, the wife's claim was treated as a suit on an account, and in Dixon v. Dixon, 107 Mo. App. 682, 82 S. W. 547, the suit was filed as an action on an account. In Craighead v. Roberts, (Mo. App.) 263 S. W. 536, a sister and her husband instituted an action to recover for services and support furnished her brother's child and the evidence supported a finding that ''the services were requested of them by the defendant with a specific promise that they would be paid for,'' and the maintenance furnished under the express promise was held to constitute an open, running account. The court said, ''since admittedly the last item of the account accrued within less than five years before the filing of the suit, none of the account is barred by the statute of limitations.'' But here the wife has not brought a suit upon an agreement or an account, and, while her claim for past support may be ''in the nature of a debt'', the obligation she in fact seeks to enforce is the common law duty imposed upon a husband to support his child (Kelly v. Kelly, supra), or, in the absence of precisely applicable terminology in the statute of limitations, ''obligations or liabilities, express or implied,'' (V.A.M.S., Sec. 516.120(1), a quasi-contractual obligation. Restatement, Restitution, Sec. 113, p. 475-476.

In at least two instances, the wife's action against her former husband to recover for support and maintenance furnished a minor child has been treated as a quasi-contractual obligation, and it was assumed, although not actually decided, that the five-year statute of limitations was applicable. In re Hartle's Estate, (Mo. App.) 236 S. W. (2) 40; Winner v. Schucart, supra; Restatement, Restitution, Sec. 148(2), note p. 592. In this connection, as a general rule, where several payments are made to discharge an obligation for which another is primarily liable, or where one is obliged to pay money for which another is liable, his right of action to recover the payments accrues when each payment is made and the statute of limitations runs from the time of payment. 54 C. J. S., Sec. 160, p. 106. As applied to the precise question involved here, the latter text indicates, however, that there are two views as to the nature of the husband's obligation and the applicability of the statute of limitations. ''It has been held that the duty of a father to support his minor child, and his quasi-contractual obligation to compensate others who, in his default, expend money to support the child, is an entire and continuing obligation, so that the statute of limitations will not begin to run, on an action to recover for expenditures for the support of the child, until the child reaches his majority or the obligation otherwise terminates, but it has also been held that a separate cause of action accrues for each expenditure, and the statute of limitations begins to run with respect thereto from the date of each separate expenditure.'' 54 C. J. S., Sec. 160, p. 107. It is true, apparently, that there are

two views as to the nature of the husband's obligation, but, with one exception, all the cases we have examined have been actions upon contracts, or there was a request to furnish maintenance and an express promise to pay and, therefore, the furnishing of support was treated as an open, running account. Linnemann v. Kirchner, 189 Ia. 336, 178 N. W. 899; Carroll v. McCoy, 40 Ia. 38; Wisniewski v. Wisniewski's Estate, 254 Mich. 663, 236 N. W. 899; Myers v. Saltry, 163 Ky. 481, 173 S. W. 1138; Jackson v. Mull, 6 Wyo. 55, 42 Pac. 603; Craighead v. Roberts, supra. In Knutson v. Haugen, 191 Minn. 420, 254 N. W. 464, the father's quasi-contractual obligation to his sister-in-law was treated ''exactly as if the defendant had made an express request of the plaintiff to care for, support, nurture, and educate his child without specifying any periodical payments therefor or any termination of the contract'' other than the child's majority. Since there was no time fixed for payment or for termination of the obligation, it was held that the obligation imposed upon the father was not from month to month or year to year ''but was entire and continuing,'' and, therefore the six-year statute of limitations upon an ''obligation express or implied'' (1953 Minn. St., Sec. 541.05) was inapplicable. The father's obligation to support his child is indeed a continuing one but, as has been pointed out in connection with the Minnesota case, there is a basic distinction between actions upon contracts and express promises and actions in which a wife seeks to enforce the husband's common law duty after she has been obliged to fulfill that obligation. Haimes v. Schonwit, 52 N. Y. S. (2) 272, 295 N. Y. 577, 64 N. E. (2) 283.

This is not to impose needless, technical refinements upon the wife's right or the husband's obligation, the question involves the fundamental problem of policy, affecting substantial rights, of when the specific cause of action *accrues*. In addition to the five-year statute of limitations and the statute relating to current accounts (V.A.M.S., Sec. 516.120, 516.160), the first section of the statute of limitations, governing personal actions, provides that ''Civil actions * * * can only be commenced within the periods prescribed in the following sections, *after the causes of action shall have accrued;* provided, that for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained.'' V.A.M.S., Sec. 516.100. And, ''a cause of action accrues, and limitations thereon begin to run, when the right to sue arises.'' Hunter v. Hunter, (Mo.) 237 S. W. (2) 100, 103. As previously indicated, when several payments are made to discharge an obligation for which another is primarily liable, a separate cause

of action accrues when each payment is made, and the statute of limitations as to each cause of action runs from the date of the particular payment, as in the case of salaries payable monthly. 54 C. J. S., Sec. 160, p. 106; Coleman v. Kansas City, 353 Mo. 150, 182 S. W. (2) 74; Mabary v. Mabary, 173 Mo. App. 437, 158 S. W. 690; Haimes v. Schonwit, supra. Under the statute, a plaintiff may wait until all installments are due and then bring one action, ''but if while waiting some installments have been due for the period of limitation they will be barred.'' Stark Bros. Co. v. Gooding, 175 Mo. App. 353, 354-355, 162 S. W. 333, 334. For the reasons indicated, the period of limitation must be computed from the time the cause of action *accrued,* and since, according to the transcript, the plaintiff's action was instituted on June 20th, 1952, she is not entitled to recover for maintenance furnished prior to June 20th, 1947.

The judgment is reversed and the cause remanded with directions to enter a judgment in favor of the plaintiff in accordance with this opinion. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court. *Leedy,* Acting P.J., and *Conkling* and *Hollingsworth, JJ.,* concur.