Genevieve McNULTY, by and through her next friend Margaret Daniels McNulty, and Margaret Daniels McNulty, Respondents,

v.

Henri A. HEITMAN, Appellant.

No. 40991.

Missouri Court of Appeals, Eastern District, Division Two.

May 13, 1980.

Love, Lacks, McMahon & Schwarz, Chester A. Love, Clayton, for appellant.

Schramm, Pines & Marshall, Paul H. Schramm, and Gary T. Soule, Clayton, for respondents.

PUDLOWSKI, Judge.

This case was instituted in the circuit court of the City of St. Louis, by the filing of a petition for declaratory judgment and as amended for support, in which it was alleged that respondent Margaret Daniels McNulty is the mother of Genevieve McNulty. It further alleged that appellant is the father of Genevieve McNulty, and in her prayer for relief prayed that the court enter its judgment and decree declaring appellant to be the father of Genevieve McNulty, ordering money for the support of Genevieve McNulty, ordering appellant, Henri A. Heitman to make payment for the support of Genevieve McNulty retroactively, and ordering appellant to pay to respondent Margaret Daniels McNulty a reasonable sum for attorney fees and for her costs.

The appellant does not challenge the sufficiency of evidence upon which the trial court found the appellant to be the natural father of Genevieve McNulty. However, he challenges that portion of the court's decree which ordered the appellant to reimburse the respondent for past support for their child, the order of present support of the child and the payment of respondent's attorney's fees.

Appellant's first assignment of error is that the trial court erred by entering a judgment against appellant in favor of respondent to reimburse the respondent for expenses that respondent incurred in sup-

porting appellant's and respondent's illegitimate child. Appellant claims there is no authority in Missouri for the proposition that the natural mother of an illegitimate child may recover against the natural father for past expenses the mother incurred in supporting the child. We disagree.

At common law the father of an illegitimate child had no duty to support his illegitimate offspring. H. Clark, Law of Domestic Relations § 5.1 (W.1968). The illegitimate child had to look to its mother for succor. Id. at 155 n. 6. However by 1576 the father of an illegitimate child could be made to support his illegitimate offspring under the Elizabethan Poor Law by instituting a suit known as a bastardy proceeding. Id. at 162. Although the bastardy proceeding was part of English jurisprudence when the common law was received in this country, it was not recognized in Missouri because the Elizabethan Poor Law which created the bastardy proceeding was local to England and did not extend to the colonies. *Easley v. Gordon*, 51 Mo.App. 637 (1892).[1] The inability of an illegitimate to compel support from his father remained the law in Missouri until 1968. *R___ v. R___*, 431 S.W.2d 152 (Mo.1968).

In *R___ v. R___* the Missouri Supreme Court construed §§ 452.150, 452.160, RSMo 1959 and § 559.353, RSMo Supp.1967 to afford illegitimate children a right of support equal to that enjoyed by legitimate children under the compulsion of two U.S. Supreme Court cases—*Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) and *Glona v. American Guarantee & Liability Ins. Co.*, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968).

In *Levy* the court held that Louisiana could not deny illegitimate children the right to sue for their mother's wrongful death (1) when the illegitimate children were dependent on their mother, (2) when in her death they suffered wrong in the sense that any dependents would have suffered on the death of their mother and (3) when Louisiana permitted legitimate children to maintain wrongful death actions and even allowed illegitimate children to recover under Louisiana's workmen's compensation law in the event of the death of their parents. The court reasoned that since the legitimacy or illegitimacy of the children's births bore no rational relation to the injury suffered, it was invidious to discriminate against them when no action, conduct or demeanor on their part was possibly relevant to the harm their mother suffered.

In *Glona* the court held that it was also impermissible for Louisiana to bar the mother of an illegitimate child from recovering for the death of her illegitimate son because there was no rational basis between the state's interest in promoting legitimate family relationships and barring recoveries for such claims since it is far fetched to assume that not allowing such claims would promote legitimate family relationships.[2]

The right of a mother of an illegitimate to recover for expenses she has incurred in the support of her illegitimate child against the child's father has been recognized in Missouri. *Mueller v. Jones*, 583 S.W.2d 222 (Mo.App.1979). We further note that a married man has a duty to support his minor children in accordance with his means and that in the event he does not supply such necessities, he is liable to one who furnishes them unless furnished gratuitously. *Smith v. Smith*, 300 S.W.2d 275 (Mo.App.1957).

---

1. The holding of *Easley v. Gordon* has since been overruled by *R___ v. R___*, 431 S.W.2d 152 (Mo.1968).

2. Since *Levy* and *Glona* the Court has held that a state may not allow illegitimate children to inherit only from their mothers while allowing legitimate children to inherit from both their mothers and fathers because such a regime does not promote the state's interest in promoting legitimate family relationships. While the Court declined to give strict scrutiny to classifications based on illegitimacy, it stated the scrutiny to be used is not a toothless one. *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). *Contra Hahn v. Hammerstein*, 272 Mo. 248, 198 S.W. 833 (1918) (holding illegitimates may not inherit from their fathers under § 340, RSMo 1909, which is worded substantially identically to § 474.060, RSMo 1978).

Respondent, as the mother of appellant's illegitimate daughter, was under a duty to support that child. H. Clark, Law of Domestic Relations at 155 n. 6. Since respondent had a duty to support appellant's illegitimate daughter, she did not furnish the support gratuitously. It would be incongruous to grant illegitimates a right of support from their parents equal to that of legitimate children but deny to mothers of illegitimates a claim against the fathers of their illegitimate children when mothers of legitimate children have a claim of support against the fathers of their legitimate children. We therefore hold that appellant is required to pay the claim of respondent.

Appellant's second contention is that the court erred by awarding plaintiff $63,680 as reimbursement for expenses incurred in the care and support of their natural daughter because the award was barred by laches and the statute of limitations.

■ Appellant's claim raises legal and equitable issues. At common law the father of minor legitimate children had a duty to support them in accordance with his means. *Smith v. Smith,* supra. Yet not every legal right afforded an adequate legal remedy. At common law, in the absence of a special statute, the mother would have to amass bills on behalf of the child before she could recover against the father as he could not be made to pay for expenses not yet incurred. *Lodahl v. Papenberg,* 277 S.W.2d 548 (Mo.1955); *Kelly v. Kelly,* 329 Mo. 992, 47 S.W.2d 762. In response to the undue rigidity and inadequacy of the common law, equity developed as a separate and distinct system of jurisprudence. D. Dobbs, Remedies § 2.1 (W.1973).

Despite the fact that there is one form of action in Missouri—the civil action—and that suits are no longer labeled actions at law or in equity, it is still important to distinguish between law and equity in matters of substance and remedy as the underlying concepts have been largely retained. *Hall v. Hall,* 506 S.W.2d 42 (Mo.App.1974); *Molasky ex rel. Clayton Corp. v. Lapin,* 396 S.W.2d 761 (Mo.App.1965); Rule 42.01. Historically, cases have distinguished between law and equity on the basis of remedy sought. Equitable remedies are coercive, commanding the defendant to do or refrain from doing a particular act and subjecting him to punishment should he disobey. Legal remedies do not command the defendant to do anything. They adjudicate the plaintiff's rights vis-a-vis the defendant's and leave the judgment to be enforced by attachment or other suitable process. D. Dobbs, Remedies at § 2.1.

■ Because of its origins as a balm for the undue rigidity and inadequacy of the common law, equity will not grant relief where the law grants an adequate remedy. *State ex rel. General Dynamics Corp. v. Luten,* 566 S.W.2d 452 (Mo. banc 1978). Due to the inadequacy of the common law, courts have exercised their equitable jurisdiction in awarding child support decrees guaranteeing adequate support for minors before the expense is incurred. The power is said to come from the courts inherent equitable power to care and provide for minors. *Urbanek v. Urbanek,* 503 S.W.2d 434 (Mo.App.1973). The purpose of this procedure is to obviate the expense and delay of independent actions until after the expense in incurred on the minor's behalf. *Lodahl v. Papenberg; Kelly v. Kelly.* Therefore a mother has the option, if she wishes, to seek support before the expense is incurred, equitable remedy or furnish the necessary support and then seek a legal remedy to recover the reasonable value of her expenses.[3] *Mayes v. Mayes,* 342 Mo. 401, 116 S.W.2d 1 (1938); *Broemmer v. Broemmer,* 219 S.W.2d 300 (Mo.App.1949).

■ Respondent opted a legal remedy. She supported her daughter for approximately 18 years before she filed suit to recover for the expenses she had already incurred in the support of her daughter. The appellant pleaded laches. Since laches is an equitable defense and is available only when an·equitable remedy is sought, it

---

**3.** If she seeks the latter, this may not be a wise course of action because the statute of limitations may operate to bar her action. *Allen v. Allen,* 364 Mo. 955, 270 S.W.2d 33 (1954).

could not operate to bar her claim. *Bevier v. Graves*, 213 S.W. 74 (Mo.1919).

However if laches could have operated to bar respondent's claim, appellant still would not have prevailed. To establish laches the defendant must show that the unreasonable delay operates to the prejudice of the other party. *State ex rel. McIntosh v. Rainey*, 397 S.W.2d 344 (Mo.App. 1965). Whether there has been an unreasonable delay which operates to the prejudice of the other party must be determined from all the evidence and circumstances adduced at trial. *Obernay v. Chamberlin*, 506 S.W.2d 446 (Mo. banc 1974). In the case at bar, appellant neither appeared or testified nor presented any evidence to show prejudice to him in respondent's dawdle in pursuit for reimbursement. The trial judge did not enter any formal findings of fact regarding laches. Since he did not make any findings of fact, we must assume that the facts were found in accordance with the result reached. Rule 73.01(1)(b). Appellant simply failed to show prejudice to himself.

Appellant's assertion that the claim is barred by the statute of limitations must also fail. While laches is similar to statutory limitation there is the substantial difference between them. Limitations is concerned with the fact of delay; laches with the effect of delay. The traditional view is that statutes of limitation may act to bar legal remedies only. *Virginia C. Mining, Milling & Smelting Co. v. Clayton*, 233 S.W. 215 (Mo.1921). However, this is no longer the law in Missouri. *Ludwig v. Scott*, 65 S.W.2d 1034 (Mo.1933).

However to take advantage of the statute of limitations as an affirmative defense, it must be pleaded and established. Rule 55.08. If the statute is not pleaded, it is waived. *Smith v. Lewis Co. Abstract & Investment Co.*, 415 S.W.2d 33 (Mo.App. 1967). In the instant case appellant failed to plead the statute. Therefore he waived the defense.

Appellant also attacks the judgment of $63,680 on the grounds that it is not supported by competent and substantial evidence. He claims that the testimony relating to food, clothing, housing, transportation, drugs and pharmaceuticals was based upon conjecture and speculation and that even if the testimony were competent, the judgment was erroneous because it was not shown that respondent did in fact incur those expenses.

The record shows that respondent presented many cancelled checks and receipts, and her testimony consisted of yearly estimates of how much she spent on her daughter's food, clothing, housing, medical, drug and transportation as well as on miscellaneous expenses. She further testified that she and the child resided with her father and he helped maintain and support the child for the first six years. In all respondent sought to establish a sum of about $91,000.

From the record it must be presumed that the trial court excluded the monetary support given to respondent for the child by respondent's father ($17,700) and took into account the ($3,000) appellant had given the respondent in prior years. For the court awarded the respondent $63,680 which was well within the evidence. Our court in *Blair v. Blair*, 571 S.W.2d 480, 481 (Mo.App. 1978) in discerning the necessity for documentary evidence to prove expenses stated that "a party's testimony as to expenses is sufficient evidence on which to base an allowance of child support and need not be proved with absolute particularity. The trial court may, at its option, accept or reject such evidence." The court's award was within the parameters of *Blair*.

Appellant further contends that the trial court erred by requiring him to pay respondent $40 per week for the support of their daughter because there was no evidence as to the child's future support requirements and inadequate evidence of appellant's ability to meet such payments.

Before a court may award an amount sufficient to meet a child's needs according to the child's station in life there must be sufficient evidence adduced as to

the cost of providing such needs. While it is impossible to determine this sum with absolute accuracy, there must be sufficient evidence so that the trial court may intelligently arrive at a sum which would approximate the amount necessary to meet the needs of the child. *Nelson v. Nelson*, 357 S.W.2d 223 (Mo.App.1962). Thus it is not necessary that there be detailed evidence of actual outlays for food, clothing, shelter as well as for medical, dental and miscellaneous expenses. *Suesserman v. Suesserman*, 539 S.W.2d 741 (Mo.App.1976).

■ By the same token in fashioning a decree for child support the trial court should consider the father's capacity to pay. The court should consider the present income of the father as well as his assets and liabilities and any other factors relevant to his ability to provide support. *Fugate v. Fugate*, 510 S.W.2d 705 (Mo.App.1974).

At trial respondent testified as to the cost of raising her daughter and as to her daughter's station in life. Respondent submitted detailed exhibits as well as bills and cancelled checks for amounts expended on her daughter. From the evidence as developed at trial, the lower court was able to intelligently appraise the child's needs.

Respondent also submitted into evidence interrogatories taken from the appellant which explored appellant's income, business interests, personal assets, age and health. In all, 33 interrogatories were propounded, many of them with subparts. From the evidence the trial court was able to intelligently determine appellant's ability to pay.

■ Appellant's final claim is that the court erred by ordering the appellant to pay respondent's attorney's fees in the sum of $5,000 because there is no statutory authority to grant attorney's fees in such a case and because appellant was under no contractual obligation to pay them. Ordinarily, attorney's fees may not be recovered in the absence of a statute or contract autho-

rizing their recovery. *Williams v. Gulf Coast Collection Agency Co.*, 493 S.W.2d 367 (Mo.App.1973).

■ The respondent contends that attorney's fees have been allowed in paternity suits, *Stegemann v. Fauk*, 571 S.W.2d 697 (Mo.App.1978), and in suits for child support, *W. B. M. v. G. G. M.*, 579 S.W.2d 659 (Mo.App.1979),[4] on the basis of the court's equitable jurisdiction to care and provide for minors. In the instant action respondent sought (1) a declaration of paternity, (2) child support and (3) reimbursement for her past expenses in caring for her illegitimate daughter. Because the purpose of awarding attorney's fees in paternity suits and in child support cases is to protect the child's right to care and support, the trial judge committed no error in awarding attorney's fees for successfully establishing a declaration of paternity and award for child support. However the rationale expressed in the cases does not support an award of attorney's fees for successfully establishing respondent's common law remedy for reimbursement for her past expenses because respondent was not suing on behalf of her daughter but on respondent's own behalf and in her own right to recover money she had spent. Thus she was not suing on behalf of the child. The evidence submitted to the trial court showed the respondent's attorney expended approximately 100 hours but did not distinguish the hours allotted to the issues of paternity and child support and the respondent's quest for reimbursement of past support expenses.

Accordingly, judgment is reversed and cause remanded to the trial court to determine the proper allowance of attorney's fees in accordance with this opinion, and in all other matters the judgment is affirmed.

GUNN, P. J., and STEPHAN, J., concur.

---

4. *W. B. M. v. G. G. M.* authorizes attorney's fees in an action for the support of an illegitimate minor. § 452.355, RSMo 1978 allows the recovery of attorney's fees in suits for support for legitimate children. See § 452.340, RSMo

1978. However under *R____ v. R____*, it would seem that § 452.355, RSMo 1978 may also allow recovery of attorney's fees in suits for child support—whether the child is legitimate or not.