Ashton Lauren SCHULZE, By and
Through her Next Friend, Susan
Dale SCHULZE, Respondent,

v.

Steven Brent HAILE, Appellant.

No. WD 45657.

Missouri Court of Appeals,
Western District.

Oct. 13, 1992.

Anita Rodarte, Kansas City, for appellant.

Ortrie D. Smith, Nevada, for respondent.

Before ULRICH, P.J., and SHANGLER and FENNER, JJ.

FENNER, Judge.

Appellant, Steven Brent Haile (Brent), appeals from the trial court's judgment in a paternity action brought against him by Susan Dale Schulze (Susan), as next friend on behalf of her daughter, Ashton Lauren Schulze (Ashton). In his appeal, Brent challenges (1) the amount of child support awarded, (2) the award of retroactive child support, (3) the order allowing Susan to relocate to Florida, and (4) the trial court's order directing Brent to pay all of Susan's attorney fees as well as the guardian ad litem fee.

Susan and her husband, Scott Schulze, were first divorced in February, 1988. After this divorce, Susan began living with Brent in approximately March of 1988. Shortly before Susan and Brent separated in May, 1988, Susan advised Brent that she was pregnant.

Susan remarried Scott Schulze in July, 1988. On January 3, 1989, Ashton was born. On March 20, 1991, Susan filed a petition for dissolution of her marriage to Scott Schulze and for a declaration of paternity alleging that Brent was the father of Ashton. On April 24, 1991, Brent filed his answer to the paternity action denying that he was the father of Ashton. On September 16, 1991, blood test results were filed with the court showing a 99.91% probability that Brent was Ashton's father. At the hearing on the paternity action on November 1, 1991, Brent admitted paternity.

The underlying standard of review herein is that on appeal of a court tried case, the judgment of the trial court is to be sustained unless there is no substantial evidence to support it, the judgment is against the weight of the evidence or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

In his first point on appeal, Brent argues that the trial court erred by imputing his annual income at $37,416 and ordering him to pay child support in the amount of $587 per month.

Child support in paternity actions is to be determined in accordance with Rule 88.01. *M.L.H. v. W.H.P.*, 831 S.W.2d 677, 683 (Mo. App.1992). Rule 88.01(e) provides that there is a rebuttable presumption that child support calculated in accordance with Form 14 is correct. The directions for use under Form 14 provide, in pertinent part, as follows:

If either parent is unemployed or underemployed, child support may be calculated in appropriate circumstances based on a determination of potential income. To determine potential income, the court may consider employment potential and probable earnings level based on the parent's recent work history, occupational qualifications, prevailing job opportunities in the community....

This direction under Form 14 is consistent with the established case law that a trial court may impute a higher income to a noncustodial parent than he is actually earning, if the evidence shows that the parent has the capacity to earn more but voluntarily refuses to do so. *Overstreet v. Overstreet*, 693 S.W.2d 242, 246 (Mo.App. 1985) (citing *Boyer v. Boyer*, 567 S.W.2d 749, 751 (Mo.App.1978)).

The record reflects that Brent has worked as a painter/drywaller since 1985. There is no dispute that until mid–1988 Brent was employed full time. In 1988, Brent was earning $12 per hour with considerable overtime pay at time and a half. For the first six months of 1988 Brent earned $18,000. According to Brent, business had been good in the construction industry up to this time, but the work slowed to the point that Brent's employer could not continue to employ him. In July of 1988, Brent started his own construction business. Brent's income tax return for 1988 reflected total wages and salary of

$17,880. Brent reported a loss in his business for 1988 in the amount of $5,543 for an adjusted gross income of $12,337.

Brent was living in Metz, Missouri, and attempting to find work through his business in Kansas City, Missouri.[1] In 1989 and 1990, Brent's sole source of income as reflected on his tax returns was from his business. When the non-cash reduction for depreciation expense is excluded as provided under Form 14, Brent's gross income as reflected by his tax returns was $13,987 in 1988, $6,516 in 1989 and $6,353 in 1990.

Susan testified that while she and Brent were still living together in 1988, she informed Brent that she was pregnant and he told her that as long as they were still together he would support the baby, but if they broke up he would quit his job before he paid her any support. Susan further testified that in January or February of 1991, and again in the summer of 1991, Brent told her he would not pay support until a judge ordered him to do so. Susan testified that in the summer of 1991, Brent told her that he had enough money to drag things through court so that she either couldn't afford to get support or that it would cost her a lot of money to get support. Susan also testified that in January or February of 1991, Brent told her that his business made $100,000 a year and that his income from the business was $50,000 a year.

In arriving at the figure of $587 per month for child support, the court adopted Susan's Form 14 calculations which established Brent's income at $3,118 per month. This amount of income could only be justified on the basis of the record herein by the court imputing income to Brent. Susan's testimony that Brent told her he was earning $50,000 from his business in 1991 is not substantial evidence, in itself, of his income when considered with Brent's tax returns

and without anything further to corroborate this figure.

There was evidence presented to show that Brent had not sought employment in the area of Metz, where he lived. Brent's only efforts to find jobs for his business were in the Kansas City area, some 80 miles from his home. Brent acknowledged that his effort to be self-employed possibly had not been a good idea. Nonetheless, he maintained that being self-employed was a dream that he was trying to make work. There was also evidence to show that an acquaintance of Brent's was employed within Brent's trade in the Metz area at the rate of $7 per hour.

There was no substantial evidence to support the trial court imputing a monthly income to Brent of $3,118. Considering Brent's recent work history, his occupational qualifications, and the pay for a person with Brent's qualifications within the community that he lived, the record supports imputing income to Brent of $1,213.33 per month.[2] Accepting the other calculations as adopted by the trial court from Susan's Form 14, Brent's child support obligation should have been set at the amount of $312 per month. Further consistent with the trial court's order, said support amount is due on the first day of each month from and after the date of the first payment which was November 1, 1991, payable through the Circuit Clerk.[3]

In his second point, Brent challenges the trial court's award of retroactive child support in the amount of $19,958. The court calculated the retroactive child support by multiplying the amount of prospective child support by the number of months from Ashton's birth to the entry of the order determining paternity. Brent argues that Susan is limited to past due necessary expenses and that there was no

1. A court can take judicial notice of the distance between two towns in Missouri. *Walsh v. Table Rock Asphalt Const. Co.,* 522 S.W.2d 116, 118 n. 1 (Mo.App.1975). We take judicial notice of the fact that it is approximately 80 miles from Metz to Kansas City.

2. This is calculated at the rate of $7 per hour for a forty hour week, which was the only evidence

presented of what a person in Brent's line of work could earn within his community.

3. An appellate court has authority, upon review, to enter the judgment the trial court should have entered. Rule 84.14; *Pemberton v. Pemberton,* 779 S.W.2d 8, 10 (Mo.App.1989).

evidence to support past due necessary expenses.

In response, Susan acknowledges that prior to the adoption of the UPA, the determination of past child support in paternity actions was based on the legal principal of reimbursement of necessaries and not the equitable principles to determine prospective support. *Landoll v. Dovell*, 778 S.W.2d 846, 847 (Mo.App.1989) (citing *McNulty v. Heitman*, 600 S.W.2d 168, 172 (Mo.App.1980)). However, without clear authority, Susan argues that the UPA has somehow shifted the burden of showing the amount of the necessary expenses away from the person seeking reimbursement for said expenses to the person obligated to pay. Susan argues that because Brent did not prove the necessary expenses, she is entitled to equitable back support.

The Uniform Parentage Act (UPA), Sections 210.817 210.852, RSMo Supp.1991, is applicable to all paternity actions brought on or after July 15, 1987. Section 210.852, RSMo Supp.1991. The action for paternity herein was filed on March 20, 1991.

The UPA, under Section 210.828(2), RSMo Supp.1991, discusses a parent's retroactive liability for reimbursement of necessary expenses. This section provides, in pertinent part, as follows:

> A parent's retroactive liability to another party for reimbursement of necessary support provided by that party to the child for whom a parent and child relationship is established ... is limited to a period of five years next preceding the commencement of the action.

Section 210.841(4), RSMo Supp.1991, further addresses the question of back support, in pertinent part, as follows:

> The court may limit the father's liability for past support of the child to the proportion of the expenses already incurred that the court deems just.

A principal of statutory construction relevant to this case is that the legislature is presumed to be aware of existing declarations of law by the courts when it enacts statutes pertaining to the same subject; it is further presumed that the legislature enacted legislation in accord with the law as declared by the courts. *Estate of Huskey v. Monroe*, 674 S.W.2d 205, 210 (Mo. App.1984).

■ The language of the UPA relevant to back support continues to reference necessary expenses already incurred. Furthermore, the language used in Section 210.841(4), RSMo Supp.1991, codifies the language of the then existing case law in regard to distribution of the burden of past support between the parties. As stated by the court in *Landoll v. Dovell*, 778 S.W.2d at 848, back support is limited to the reasonable value of necessaries supplied by the custodial parent. However, once paternity is established, the trial court may divide the expense of past necessaries between both parents. *Id.* (citing *A.V. v. G.V.*, 726 S.W.2d 782, 784 (Mo.App.1987)).

If the legislature had intended to allow retroactive support in the nature granted by the trial court, it could have chosen to address this subject under the UPA in a fashion contrary to the then existing law.[4] The legislature did not do so.

■ Additionally, it is a long established basic principal under the law that the party asserting the affirmative of an issue assumes the burden of proof. *Hodgson v. Pixlee*, 272 S.W.2d 222, 226–27 (Mo.1954). Susan is the party claiming entitlement to back support. Accordingly, she assumes the burden of proof. There is nothing in the UPA to the contrary.

■ However, the record before this court contains insufficient evidence from which a determination can be made of the necessary expenses incurred by Susan on behalf of Ashton. Under the circumstances, especially regarding the interests of the child in receiving the necessities and the interests of justice in seeing that both

---

4. A further argument is raised in this appeal that allowing retroactive equitable support to an illegitimate child would violate equal protection because such support is not available to legitimate children. It is not necessary for us to either reach or address this constitutional challenge.

parents shoulder the burden of the expense of those necessities, this court chooses to exercise its discretion to remand the case so that evidence of the necessary expenses, if any, incurred by Susan on behalf of Ashton can be fully developed. *See,* Rule 84.14 and *Moss v. National Super Markets, Inc.,* 781 S.W.2d 784, 786 (Mo.banc 1989).

■ In his third point, Brent argues that the trial court erred by allowing Susan to relocate with Ashton to the State of Florida. Brent argues that authority to move to Florida was beyond the scope of the pleadings and not tried by consent of the parties.

The general rule is that the evidence at trial must conform to the pleadings. *Delaporte v. Robey Building Supply, Inc.,* 812 S.W.2d 526, 534 (Mo.App.1991). However, a failure to object timely and specifically to evidence beyond the scope of the pleadings results in consent to try the applicable issues as if raised by the pleadings. *Midwest Materials Co. v. Village Development Co.,* 806 S.W.2d 477, 488 (Mo.App. 1991) (citing *Arnett v. Venters,* 673 S.W.2d 67, 72 (Mo.App.1984)).

In the case at bar, Susan testified on direct examination, without objection, that she intended to attend a Ph.D. program at Florida State University in Tallahassee. Susan testified as to the type of visitation she proposed for Brent while she was in Florida and proposed that she and Brent share transportation costs.

On cross examination, inquiry was made by opposing counsel as to the educational opportunities for Susan within the State of Missouri and why Susan would need to go to Florida as opposed to staying in Missouri.

The issue of Susan removing Ashton to Florida was tried by consent. Brent's third point is denied.

■ In his fourth and final point, Brent argues that the trial court erred in ordering him to pay the entire amount of Susan's attorney fees and the entire guardian ad litem fee. Brent argues that: 1) there was insufficient evidence to show the amount of attorney fees incurred by Susan to establish paternity as opposed to the fees attributable to her action for past support; 2) there was insufficient evidence to show the amount of attorney fees attributable to her second dissolution from Scott Schulze, the cause to which the paternity action was joined; and 3) there was insufficient evidence to show Susan's need for attorney fees and his ability to pay.

Section 210.842, RSMo Supp.1991, provides that the court may order fees for counsel and the guardian ad litem in a paternity action to be paid by the parties in such proportion as determined by the court with some exceptions not applicable to the case at bar.

In cases analyzing the law prior to the adoption of the UPA, attorney fees were allowed in paternity actions as part of the court's equitable jurisdiction to care and provide for minors. *Robinett v. Robinett,* 770 S.W.2d 299, 305 (Mo.App.1989); *Parker v. Bruner,* 692 S.W.2d 379, 382 (Mo. App.1985); *McNulty v. Heitman,* 600 S.W.2d 168, 174 (Mo.App.1980). This line of cases reasoned that establishing paternity was in protection of the minor's rights, but a claim for reimbursement of past necessary expenses was not to protect the minor's rights but for the protection of the party who had expended the funds and, therefore, attorney fees were not recoverable on authority of the court's equitable jurisdiction to care and provide for minors. *McNulty,* 600 S.W.2d at 174.

Pursuant to Section 210.842 of the UPA, an award of attorney fees is now statutorily authorized and no longer solely an exercise of the court's equitable jurisdiction. Furthermore, as discussed under the second point of this appeal, Section 210.841 of the UPA specifically authorizes the court to award back support. The prior case law's holding that, in a paternity action, the court is without authority to award attorney fees for the portion of fees attributable to a claim for reimbursement of back support is no longer valid, since back support is authorized under the UPA and an award of attorney fees is allowed for an action under the UPA.

Brent's claim that the trial court erred by allowing attorney fees attributable to Susan's claim for back support is denied.

Brent's argument in regard to attorney fees attributable to Susan's divorce stems from the fact that the paternity action was joined with Susan's petition for dissolution of her marriage to Scott Schulze. However, the record clearly reflects that Susan had paid the sum of $400 attributable to her dissolution and that the attorney fees awarded to her by the court were all attributable to her paternity action.

Brent's final argument under his fourth point that there was insufficient evidence to show Susan's need for attorney fees and his ability to pay is likewise not supported by the record. As previously discussed under the first point of this appeal, evidence was presented in regard to Brent's income and earning capacity. Susan's income was likewise reviewed as well as her plan to complete her educational goals and the effect this would have on her finances. There was also evidence to show that when Susan first became pregnant, Brent acknowledged paternity and then challenged paternity until the time of the hearing. Furthermore, there was evidence to show that Brent told Susan that he would drag things through court and cause her financial hardship in order for her to obtain child support.

Brent's fourth point is denied.

The judgment of the trial court ordering Brent to pay child support in the amount of $587 per month is reversed and the trial court is directed to order Brent to pay child support in the amount of $312 per month payable on the first day of each month from and after November 1, 1991, through the office of the Circuit Clerk of Vernon County, Missouri. The judgment of the trial court awarding Susan retroactive back support in the amount of $19,958 is also reversed and the case is remanded so that evidence of the necessary expenses, if any, incurred by Susan on behalf of Ashton, can be developed. In all other respects, the judgment of the trial court is affirmed.

The costs of this action shall be taxed one-half against each of the parties.

All concur.